### In re AMERICAN PROPERTY CORPORATION, Debtor.

**Bankruptcy No. 84–01544.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 13, 1984.

---

Russell S. Bogue, III, Tampa, Fla., for F.D.I.C.

Jeffrey W. Warren, Tampa, Fla., for debtor.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM OPINION AND ORDER OF DISMISSAL

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on to be heard on November 6, 1984, upon the Motion to Dismiss filed by the Federal Deposit Insurance Corporation, in its corporate capacity ("FDIC") alleging that the Chapter 11 proceeding commenced by the debtor, American Property Corporation ("APC") was not commenced in good faith and in accordance with the underlying principles of the Bankruptcy Code. The Court heard arguments and representations of counsel, considered evidence consisting of the pleadings, the deposition of George Miller, a corporate officer of APC and APC's Statement of Financial Affairs and Schedules.

APC was incorporated in 1978. Despite its incorporation in 1978, the first meeting of the Board of Directors of APC was not held until October 12, 1982, some four (4) years after its incorporation. The minutes authorized, for the first time, the issuance of stock, adoption of a corporate seal, named officers of the corporation, and established a corporate checking account. Apparently, for the first four (4) years of its incorporation, APC was not capitalized, conducted no business, made no investments, owned no property, had no debts, no income and no employees.

The deposition of George Miller indicates that the apparent reason for the October 1982 Board Meeting was because Mr. J.C. May, a principal of APC, and stockholder of many related corporations, had located a site for apartment development and selected APC to take title to the property. May's negotiations culminated in the purchase on October 17, 1983, by APC of certain unimproved real property in Hillsborough County, Florida. That property is essentially the sole asset in these proceedings.

At the time APC purchased the property, it was aware that the property was the subject of foreclosure proceedings by the FDIC, which held two mortgages on contigious parcels forming the subject real property. Specifically, the FDIC commenced foreclosure proceedings pursuant to its two mortgages and recorded Lis Pendens thereon, on July 6, 1982, and March 31, 1983, respectively. Thereafter, the FDIC obtained final judgments in foreclosure on both of those mortgages on May 6, 1984 and May 16, 1984, respectively. The FDIC proceeded to a foreclosure sale on one parcel on July 6, 1984, evidenced by the filing of a Master's Report that day. However, on July 12, 1984, prior to the Federal Court acting on the Special Master's Report and Request for Confirmation, the debtor filed its Chapter 11 petition herein. At the time of filing of the petition, the FDIC had not proceeded to a foreclosure sale on its sec-

ond mortgage encumbering the second parcel of the subject property.

From the time that APC acquired the property until the filing of its bankruptcy petition in July, 1984, APC attempted to rezone the property from CU (allowing shopping center development) to CP (allowing multi-family development). The Miller deposition indicates that all of the monies utilized to fund the rezoning attempt were infusions of capital by insiders of APC. APC's rezoning attempt proved unsuccessful and on April 26, 1984, the Zoning Master entered her recommendation denying the rezoning. APC has offered no proof regarding further plans for the development of the real property. Instead, APC has entertained several purchase offers for the property.

The evidence in the record indicates that as of the petition date, APC's only principal asset was the real property at issue herein. APC owned a residential lot in Gainesville which was to be used to build a house for J.C. May, an insider, as well as an automobile which is in the possession of and operated by Mr. May's son. Additionally, APC had no creditors, other than an allegation by counsel for APC that certain insider debts existed. It is also clear that APC does not conduct any business in an orthodox sense other than speculating in real estate.

█ The case law is clear when applied to the facts as set forth above that the petition of APC was not filed in "good faith" and accordingly should be dismissed. Although Chapter 11 does not by its terms require that a petition be filed in "good faith" the Courts have implied such a provision to prevent abuse of the Bankruptcy laws and to protect jurisdictional integrity. Courts have found that if a Chapter 11 petition is not filed in good faith, grounds exist to either vacate the automatic stay or dismiss the petition. *Furness v. Lilienfield,* 35 B.R. 1006 (D.Md.1983); *In re Mildevco,* 40 B.R. 191 (Bky.S.D.Fla.1984); *In re Lotus Investments, Inc.,* 16 B.R. 592, 594 (Bky.S.D.Fla.1981). In short, the good faith requirement guards against jurisdic-

tional abuse as well as the misuse and manipulation of bankruptcy remedies in order to make certain that debtors seek protection of the Bankruptcy laws to accomplish legitimate aims and objectives and for no other purpose. *In re Dutch Flat Investment Co.,* 6 B.R. 470 (Bky.N.D.Cal. 1980); *In re Mogul,* 17 B.R. 680 (Bky.M.D. Fla.1982).

█ From the emerging case law decided relative to the "good faith" concept, no one factor has emerged as determinative of good faith, yet courts have found several indicia particularly persuasive. An important factor to consider is whether the debtor's reorganization effort is one which "involves essentially a two-party dispute which can be resolved outside the Bankruptcy court's jurisdiction, where the purpose of the filing is to frustrate a creditor's sale." *Mildevco, supra; In re Landmark Capital Company,* 27 B.R. 273 (Bky.D. Ariz.1983). Thus, debtors seeking protection of the Bankruptcy Court must have real debt, real creditors, and a legitimate business purpose. Clearly, bad faith is shown if the purpose of a Chapter 11 debtor is to hold a single asset "hostage" in order to speculate that such asset may increase in value in order to recover its original investment at the creditor's risk. Thus, courts have looked to whether a debtor names any unsecured creditors, *In re Alison Corp.,* 9 B.R. 827 (Bky.S.D.Cal. 1981); whether the debtor has any assets to protect; and whether the debtor is engaged in an ongoing business, or whether the debtor is attempting to use the Bankruptcy courts to embark on a new speculative real estate venture. *In re Dutch Flat Investment Company, supra; In re Washington Funding Corporation,* 13 B.R. 549 (Bky.C.D.Cal.1981).

In this case, the only real asset at issue is unimproved real property, which the debtor purchased knowing the property was in foreclosure with the intent to rezone the property thereby increasing its value. The rezoning attempt failed in April 1984 and this Chapter 11 petition was filed in July 1984, only after the FDIC obtained

final judgments in foreclosure, and proceeded to a foreclosure sale on one parcel. Moreover, the record indicates that the debtor has no creditors. The only business of APC is a speculative attempt to market the subject property. It is apparent to this Court that the debtor is seeking protection of the Bankruptcy Code simply as a means from preventing the FDIC from enforcing its claim.

An additional circumstance leading courts to dismiss cases under the good faith requirement is the "new debtor syndrome". This syndrome is characterized by the formation of a debtor corporation, often shortly before the petition is filed, for little purpose other than to obtain the benefit of the bankruptcy laws. *In re Lotus Investment, Inc., supra* at 595. *See also, In re Zed, Inc.,* 20 B.R. 462 (Bky.N.D.Cal. 1982); *In re Alison Corp., supra.*

Although APC was formed some four and one-half years prior to filing bankruptcy, APC was essentially a dormant, nonfunctioning corporation which acquired its major asset shortly before filing bankruptcy. Additionally, until the real property in question was acquired, APC was a corporate shell, with no bank accounts, offices, employees, and the like, which indicate a viable ongoing business operation. Indeed, after J.C. May selected APC as the owner of this property, the only business of APC was the abortive attempt to rezone the property.

In sum, given the sudden life of APC, the absence of any substantial business activity prior to the obtaining of the subject property, and thereafter only attempting to rezone the property for speculative purposes, the lack of debt of any kind, the lack of any evidence in the record of APC's future plans for the property other than holding for sale and the resulting lack of reasonable prospects for a successful reorganization, even at this early stage, the court concludes that the APC bankruptcy was not one commenced in "good faith". Accordingly it is

ORDERED, ADJUDGED AND DE-CREED that the FDIC's motion to dismiss this Chapter 11 proceeding be and the same hereby is granted and this Chapter 11 proceeding is hereby dismissed.