**In re 234–6 WEST 22ND ST. CORP., Debtor.**

**Bankruptcy No. 97 B 46274 (TLB).**

United States Bankruptcy Court, S.D. New York.

Nov. 14, 1997.

Finkel Goldstein Berzow Rosenbloom & Nash, L.L.P. by Neal M. Rosenbloom, New York City, NY, for Debtor-in-Possession.

Brill & Meisel by Allen H. Brill, New York City, NY, for Eileen Goudge Zuckerman and Albert J. Zuckerman.

### OPINION ON MOTION TO LIFT THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)

TINA L. BROZMAN, Chief Judge.

Eileen G. Zuckerman and Albert J. Zuckerman move to lift the automatic stay so that they may conduct a foreclosure sale that was stayed by the Debtor's chapter 11 petition. The Debtor objects to the motion; the City of New York Department of Finance supports it.

*I.*

The facts have been gleaned from the papers and the undisputed facts stated during oral argument at the hearing on October 22. The parties have been involved in lengthy litigation regarding the real property located at 236 West 22nd Street, a single room occupancy hotel in the Chelsea section of Manhattan. Prepetition, on October 27, 1992, an entity known as 234–6 W. 22 St. Corp., the holder of fee title to two brownstone-type buildings known as 234 and 236 West 22nd Street, filed a chapter 11 petition ("1992 debtor"). Both properties were encumbered by at least three mortgages, two of which were held by the Zuckermans, either jointly or individually.

During that first proceeding, Judge Conrad directed the 1992 debtor to perform its obligations under a sales contract to convey the land and building at 234 W. 22nd Street to Albert Zuckerman. This left the 1992 debtor with title only to 236 W. 22nd Street, which was encumbered by a mortgage held by Eileen Zuckerman. On May 23, 1994, Judge Conrad granted the application of the United States Trustee to dismiss the case based in part on the 1992 debtor's inability to reorganize.

Both Zuckermans hold judgments against the 1992 debtor; however, only Eileen, who holds a judgment in the amount of $155,-501.39 dated June 2, 1997 for obligations on the second mortgage, has been authorized to foreclose on the Debtor's property. Although her judgment was appealed, the appeal was never perfected. Eileen noticed a

foreclosure sale for September 25, but the sale was stayed when the Debtor filed its chapter 11 petition on September 24. Albert obtained a judgment in the amount of $351,573.23 on December 19, 1996; he characterizes the debt as unsecured. The Debtor claims that this judgment has been satisfied, an assertion Mr. Zuckerman disputes. The City of New York claims to have a statutory first priority lien of approximately $57,000 for unpaid real estate taxes. This amount is subject to increase pending the results of the City's investigation into whether the Debtor might also be liable for water meter and sewer charges.

Interestingly, the Zuckermans point out that the 1992 debtor was dissolved by proclamation of the State of New York on March 24, 1993, for failure to pay franchise taxes, and a new entity was incorporated with the same name on May 7, 1997. The Debtor acknowledges this and reports that upon incorporation the Debtor assumed all obligations and assets of the 1992 debtor including Eileen Zuckerman's judgment. As for the real property which the 1992 debtor held, during oral argument the parties disclosed that on May 7, 1997, the 1992 debtor transferred its real property to the Debtor pursuant to an instrument called a "confirmatory deed" which was recorded on September 23, 1997, the day before the Debtor filed its petition, and two days before the scheduled foreclosure sale.

The Debtor's chapter 11 petition identifies the property at 236 W. 22nd Street as its only asset. The Debtor has no employees and only one tenant, which it is attempting to evict for failure to pay rent. The Debtor lists among its liabilities two secured debts, the mortgage to Eileen Zuckerman in the amount of $160,000, and a real estate and tax lien in favor of New York City in the amount of $60,000. According to the City, as of October 16, 1997, it is owed the sum of $57,802.02 for unpaid real estate taxes dating back to 1994, plus any potential charges for water and sewer service. The Debtor listed only one unsecured debt, $4,500 to Con Edison, but now concedes that it is also liable to New York State for the unpaid franchise taxes which led the State to dissolve the Debtor.

The Debtor and the Zuckermans dispute the current value of the property. In its petition, the Debtor values the property around $625,000 based on the sales of other buildings in the immediate area. The Zuckermans respond that in the earlier bankruptcy the 1992 debtor had valued the property in the $200–300,000 range. According to the Debtor, that valuation was estimated in the midst of an economic recession at a time when the building was largely tenanted. Neither party offered any evidence to support their competing valuations.

At oral argument, both the Zuckermans and the Debtor agreed that a sale of the property is inevitable. The bone of contention between them is a question of who conducts the sale. Eileen Zuckerman, desirous of enforcing her remedies promptly, contends that if her motion is granted, she could renotice and conduct the foreclosure sale in approximately 32 days after lifting the stay. The Debtor asks that it be given as many as 90 days to market the property, during which time the Debtor hopes that besides evicting the building's only tenant it would obtain an offer that would be higher than what would be achieved at a foreclosure sale.

In addition, the Debtor reported that its principal, Thomas Iveli, has been paying, and would continue to pay for, insurance on the property to protect it against fire, theft and other potential damage. The Debtor also offered as adequate protection to its secured creditors safeguarding the property with a working lock system, continuing its efforts to evict the remaining tenant and furnishing heat to prevent any damage to the building such as pipes bursting during the upcoming winter. Iveli committed that he would make up any shortfall necessary to fund the adequate protection just outlined.

## II.

Eileen Zuckerman seeks relief from the automatic stay pursuant to §§ 362(d)(1) and (d)(2) in order to continue the foreclosure sale that was stayed by the Debtor's filing for chapter 11 protection. Because the Debtor is a single asset real estate entity, a

question could arise as to whether I can consider this motion. The Bankruptcy Code was amended in 1994 to insert a new provision, § 362(d)(3), applicable to single asset real estate cases providing that a motion to lift the stay against a single asset real estate debtor should not be granted if a debtor files a plan that has a reasonable chance to be confirmed within 90 days of the petition date. One court has faced squarely the argument that this subsection means that a bankruptcy court cannot lift the stay under any other subsection until this period expires. *In re Duvar Apartments, Inc.,* 205 B.R. 196 (9th Cir. BAP 1996). As that court correctly notes, the availability of relief under § 362(d)(3) does not preclude appropriate relief available under any other subsections in § 362(d). *Id.* (citing cases and 3 L. King *et al., Collier on Bankruptcy,* ¶ 362.07 at 362–74 (15th ed. rev.1997)).

At oral argument, counsel for Ms. Zuckerman conceded that because she did not carry her burden as to the issue of whether the Debtor had equity in the property, *see* 11 U.S.C. § 362(g)(1), she could not prevail on her motion to lift the stay under § 362(d)(2). Therefore, I am denying the motion to lift the stay under that section. Because only Eileen Zuckerman is a secured creditor, if I should grant the requested relief under § 362(d)(1) for cause, I will lift the stay only with respect to her.

I therefore turn to section 362(d)(1), which provides in pertinent part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the automatic stay ... by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

Eileen Zuckerman argues that the totality of circumstances surrounding the filing of this case provides the cause necessary to lift the automatic stay on the grounds that the Debtor filed its petition in bad faith. As a preliminary point, she questioned whether the Debtor even had standing to file its chapter 11 petition because the Debtor had no current relationship to the property, rec-

ord title being held in the "original" 234–6 W. 22 Street Corp. which was dissolved by New York State. During oral argument, however, her counsel announced that he agreed that a deed transferring the property had been filed, albeit shortly before the bankruptcy. Returning to the automatic stay, Ms. Zuckerman argues that the Debtor seems to be the prototypical bad faith filer because it filed its petition on the eve of foreclosure, there was a previous bankruptcy case that was dismissed, and it has no operations, cash flow, or employees, and few unsecured creditors. Moreover, she says, the Debtor omitted the judgment of Albert Zuckerman and potential liabilities to New York State from its list of liabilities. All of these factors taken together, her argument concludes, warrants a finding that cause exists to lift the stay.

Acknowledging that it did incorporate recently, the Debtor says its motivation was to preempt the anticipated argument of Zuckerman that a dissolved corporation has no standing to file for chapter 11. The Debtor maintains that its incorporating does not demonstrate bad faith because it assumed the assets and obligations of the 1992 debtor and the shareholders are identical. (No proof of these assertions was offered.) This behavior is in sharp contrast, according to the Debtor, from situations commonly referred to as the "new debtor syndrome," whereby an entity is created to file bankruptcy whose purpose is to isolate an insolvent property and its creditors from other assets of a prior owner. The Debtor has not contradicted Zuckerman's other allegations, namely, that the Debtor conducts no business, has no employees and few unsecured creditors.

The Debtor also states that circumstances have changed since the dismissal of the 1992 case which circumstances support maintaining the automatic stay. Specifically, the Debtor states that the liabilities that were present in 1992 have been sizeably reduced and the market value of the property has risen dramatically thereby providing a ready source of value to allow all interested parties to realize upon the substantial equity in the property.

The Bankruptcy Code expressly addresses the issue of burden of proof in a section 362(d)(1) motion. The party requesting relief has the initial burden of going forward and, thus, is required to make a showing of cause in support of lifting the stay. Neither the statute nor the legislative history defines the term "for cause" and the legislative history gives only very general guidance. *In re Sonnax Industries,* 907 F.2d 1280, 1285 (2d Cir.1990). The party opposing relief has the burden of proof to show that it is entitled to continuation of the stay. Section 362(g) places the burden of proof on the debtor for all issues other than "the debtor's equity in property." 11 U.S.C. § 362(g)(1). *Sonnax Industries,* 907 F.2d at 1285. The rationale for the burden of proof rule is that the automatic stay is intended only to shift the initiative to the creditor to bring the issue before the Bankruptcy Court, and not to create any new right in the debtor to stay proceedings. *In re Terry,* 12 B.R. 578, 581 (Bankr.E.D.Wis.1981). This burden includes not only the burden of going forward with the evidence but also the burden of ultimate persuasion. *In re Certified Mortgage Corp.,* 20 B.R. 787, 788 (Bankr.M.D.Fla. 1982). Thus, if a creditor seeking relief from the stay has made a *prima facie* case of "cause" for lifting the stay, the burden of going forward shifts to the debtor pursuant to § 362(g). *In re Laguna Associates, L.P.,* 147 B.R. 709, 714–15 (Bankr.E.D.Mich.1992), *aff'd,* 30 F.3d 734 (6th Cir.1994). This standard remains firm even if the issue is relief from the stay for cause based upon an allegation of bad faith. *Id.*

The effect of the Debtor's incorporation and its assumption of assets and liabilities of the 1992 debtor can be viewed in two ways. The first is to take these acts at face value and acknowledge the creation of the Debtor, a new corporate entity separate from the 1992 debtor, but with the same name, assets, liabilities and shareholders as the 1992 debtor.

Under such a scenario, the Debtor's assumption of assets and liabilities of the dissolved 1992 debtor is permissible. Although New York law prohibits a dissolved corporation from engaging in new business, *In re McGregor,* 182 B.R. 96, 100–01 (Bankr. S.D.N.Y.1995) (citing numerous New York cases), a dissolved corporation retains the "power to fulfill or discharge its contracts, collect its assets, sell its assets at a public or private sale, discharge or pay its liabilities, and do all other acts appropriate to liquidate its business." N.Y. Bus. Corp. Law § 1005(a)(2). The 1992 debtor was certainly within its statutory right, even as a dissolved corporation, to transfer its assets and liabilities to a new corporate entity, in this instance, the Debtor. *Id.* This does not mean, however, that the Debtor owns the realty.

It is well-settled New York law that the transfer of title to real property can be accomplished only by the delivery and acceptance of an executed deed. *ERHAL Holding Corp. v. Rusin,* 229 A.D.2d 417, 645 N.Y.S.2d 93 (1996), *citing* N.Y. Real Property Law § 244; *Manhattan Life Ins. Co. v. Continental Ins. Cos.,* 33 N.Y.2d 370, 353 N.Y.S.2d 161, 308 N.E.2d 682 (1994). Therefore, for the Debtor to have connection to the property and thus invoke the automatic stay to protect the property from foreclosure, there must be a deed effectuating the transfer. At oral argument, the parties agreed that the 1992 debtor transferred the property to the Debtor by means of a confirmatory deed, dated May 7, 1997 but recorded September 23, 1997.

An alternative scenario is to consider the Debtor's reincorporation as the revival of an inactive corporation. New York case law holds that after a corporation is dissolved for failure to pay franchise taxes, it may later reincorporate under the same name. However, that entity cannot use its status as "newly-incorporated" to avoid outstanding franchise tax obligations. *Prentice Corp. v. Martin,* 624 F.Supp. 1114, 1115 (S.D.N.Y.1986) (citing *D & W Central Station Alarm Co. v. Copymasters, Inc.,* 122 Misc.2d 453, 471 N.Y.S.2d 464, 466 (N.Y.Civ.Ct.1983)). In situations where a dissolved corporation transfers its assets postdissolution to a successor corporation but in reality never ceased operating, the successor corporation will be liable for the payment of outstanding franchise tax obligations of its predecessor. *Costello v.*

*N.Y.S. Dep't of Taxation & Finance,* 129 Misc.2d 285, 493 N.Y.S.2d 88, 89–90 (Sup. Ct.1985), *aff'd,* 125 A.D.2d 775, 509 N.Y.S.2d 202 (1986).

Eileen Zuckerman points out that the Debtor omitted any obligations for past due franchise taxes from its petition's list of creditors. Under either of the above two scenarios, the Debtor, as it acknowledged at the hearing, is liable for these taxes. So Zuckerman is correct that the Debtor has failed to list the New York State Department of Finance as a creditor for outstanding obligations for franchise taxes that led to the Debtor's previous dissolution. However, the Debtor has acknowledged this tax liability and has not attempted to deny its liability to Eileen Zuckerman. In any event, the question of whether the Debtor may properly invoke the automatic stay is answered because, under either scenario, it is the holder of title to the property.

 Turning to the meat of the motion, Zuckerman cites to the *C–TC* case for the standards to determine whether bad faith filings can constitute the necessary cause for relief from the stay. *C–TC 9th Ave. Partnership v. Norton Co. (In re C–TC 9th Ave. Partnership),* 113 F.3d 1304 (2d Cir.1997). Although in the context of a motion either to dismiss a chapter 11 case under § 1112(b) or to lift the stay under § 362(d)(1) the standards for bad faith as evidence of cause are not substantively different from each other, *In re Laguna Assocs., L.P.,* 30 F.3d 734, 737 (6th Cir.1994), *Collier's* does warn that "the concept of bad faith filing should be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors except in extraordinary circumstances." 3 L. King *et al., Collier on Bankruptcy,* ¶ 362.07[6] at 362–99 (15th ed. rev.1997). In other words, when faced with a motion to lift the stay on bad faith grounds, a judge must conduct a careful analysis similar to that performed with a motion to dismiss a case on bad faith grounds. In both cases, the relief sought is an extraordinary remedy that requires careful examination of the facts on a case-by-case basis. But where the circumstances require such relief, and the cases granting both types of motions are legion, a judge must not shrink from ordering it.

 The Debtor argues correctly that *C–TC* is inapposite here because the Debtor is not a partnership in liquidation but a corporation intending to reorganize, and there is potentially enough value in the property that any contemplated opposition of Eileen Zuckerman to a proposed plan will be mooted because her claim will not be impaired by a plan. (Remember that the burden of proof on the issue of equity lies with movant for relief from the stay, 11 U.S.C. § 362(g)(1), and that Ms. Zuckerman has not met that burden.) In fact, the Debtor contends that the property is readily marketable, enabling the Debtor to formulate and file a liquidating plan within a reasonably short time.

Ms. Zuckerman argues that filing a petition on the eve of foreclosure is evidence of bad faith especially when coupled with the fact that the a previous chapter 11 filing was dismissed. But, in and of itself, a filing on the eve of foreclosure is not *per se* indicative of bad faith. *Sonnax,* 907 F.2d at 1285. And as the Debtor correctly notes, case law indicates that a second chapter 11 filing following the dismissal of a prior case may be justified where the circumstances change from the prior proceeding. *See, e.g., In re Spectee Group, Inc.,* 185 B.R. 146, 156–57 (Bankr.S.D.N.Y.1995); *In re Barrett,* 964 F.2d 588 (6th Cir.1992). It should be noted that, typically, the issue of changed circumstances, which the Debtor raised, arises in the context of the filing of a second chapter 11 petition by a reorganized debtor complaining that because of a material change of circumstances, it may default under its plan absent further reorganization proceedings. *In re Roxy Real Estate Co.,* 170 B.R. 571, 576 (Bankr.E.D.Pa.1993) (citing *In re Elmwood Development Co.,* 964 F.2d 508, 511–12 (5th Cir.1992); *In re Mableton–Booper Assocs.,* 127 B.R. 941 (Bankr.N.D.Ga.1991)).

Courts construe the concept of a material change in circumstances quite narrowly. *Roxy Real Estate,* 170 B.R. at 576. In the context of successive reorganization cases where the goal of the second filing is to relieve the debtor of some obligation under

the confirmed plan, the debtor must show unanticipated changed circumstances that justify the filing of a successive petition. *Elmwood,* 964 F.2d at 511 n. 11 (debtor filed second case shortly after substantial consummation to contradict or evade plan requirements).

In the cases dealing with failure of a plan, a reorganized debtor has to demonstrate that a new filing is justified due to the unforeseeable negative changes that affects its ability to fulfill the terms of the reorganization plan. *Roxy Real Estate,* 170 B.R. at 576. The inquiry is a bit different in the context of dismissed cases. With a filing that comes after a dismissed case, it follows logically that, whereas a reorganized debtor would have to demonstrate that financial circumstances have deteriorated, a debtor whose case was previously dismissed must show that the circumstances have improved sufficiently to support the possibility of reorganization. *See e.g., In re Barrett,* 964 F.2d 588, 590 (6th Cir.1992) (third chapter 13 case was in good faith where debtor showed improved circumstances that demonstrated current and prospective ability to fund plan).

Reported cases say little as to who bears the burden of demonstrating that circumstances have changed. Nonetheless, it seems evident that where successive filings are separated by a short period of time, the Debtor must show that such circumstances exist to warrant the new filing. *See, e.g., Spectee Group,* 185 B.R. at 156 (six weeks); *In re Fuhrman,* 118 B.R. 72, 74 n. 2 (Bankr. E.D.Mich.1990) (five weeks). In the *Fuhrman* case, the court opined that as the passage of time between the two petitions increased, a debtor's burden of proof on this issue devolved upon the party challenging the lack of changed circumstances. However, the statute is clear as to the burdens of proof; the movant must show initial cause and the burden thereafter shifts to the party opposing the motion, typically the debtor, on all issues except equity in the property. 11 U.S.C. § 362(g). Thus, where a Debtor files a new reorganization case after dismissal of its previous cast due to lack of ability to reorganize, I do not think that it should enjoy a presumption that it now has the ability to reorganize without demonstrating that some new circumstances have changed which would lead to the conclusion that the new filing will not suffer the same fate as the prior dismissed case. *See, e.g., Roxy Real Estate Co.,* 170 B.R. at 574 (where first filing is unsuccessful, absent a showing of material change in circumstances, there is little reason to believe that second filing will yield different result).

With that in mind, I examine what the Debtor contends constitutes the changed circumstances that ought warrant my finding that its case was not filed in bad faith: (i) the dramatic increase in the market value of the property due to the "renaissance" in the Chelsea neighborhood of Manhattan; (ii) the instant proceeding only deals with one property as opposed to the two properties that were the subject matter of the 1992; and (iii) Albert Zuckerman's unsecured judgment regarding the third mortgage has been satisfied, thereby leading to a decrease in liabilities.

On the issue of the value of the property, other than the affidavit of Mr. Iveli, its principal, that was filed in support of keeping the stay intact, the Debtor offered no admissible evidence to support its valuation of the property at $625,000 or to prove that parties exist who are interested in either financing or purchasing the property. Although that valuation by Mr. Iveli is admissible, *New Haven Radio, Inc. v. Meister (In re Martin–Trigona),* 760 F.2d 1334, 1344 (2d Cir.1985) (citing 3 J. Wigmore, *Evidence* §§ 714 and 716 (Chadbourn rev.1970)), it is not very probative standing alone because it is completely self-serving. All that the Debtor's principal has done is to opine that the property has escalated in value. He has not shown that he has made improvements to, or cured the violations against, the property. He has not introduced evidence of property values in the area. He has not shown that he has increased the rent roll. Whereas his affidavit is sufficient to overcome the request for lifting of the stay under section 362(d)(2) because the movant did not introduce any evidence of value, Mr. Iveli's affidavit is a very slender reed upon which to base an argu-

ment of changed circumstances where he has not established any basis for his valuation.

Even accepting Mr. Iveli's valuation, however, does not mean that the Debtor prevails here. Commodities experience periods of rising prices that are counterbalanced by periods of declining prices. Case law from other circuits suggests that "changed market conditions alone" where a debtor experiences only the typical fluctuations of supply and demand are not sufficiently changed circumstances to warrant a second filing. A change in market conditions in a particular locality is not viewed as justifying a second petition. *Roxy Real Estate,* 170 B.R. at 576 (citing cases). Instead, a debtor must experience something akin to a fundamental change in its market which must be unforeseeable. *Elmwood Development Co.,* 964 F.2d at 512.

The Debtor must demonstrate something more—its own affirmative steps to improve its chances for a successful reorganization. *See, e.g., Downey Savings & Loan Ass'n v. Metz (In re Metz),* 820 F.2d 1495, 1498 (9th Cir.1987) (ch. 13 debtor's increased salary since previous petition was bona fide change) (citing *In re Johnson,* 708 F.2d 865, 868 (2d Cir.1983)); *Barrett,* 964 F.2d at 590. The Debtor fails to meet that burden. It claims that its liabilities have diminished because of the satisfaction of Albert Zuckerman's judgment. But that debt is an unsecured debt, which has little effect on whether the Debtor can reorganize [1], except to the extent that if it subsists, that debt could, through voting power, cause the unsecured creditors to vote down a plan of reorganization. Other liabilities may have increased due to the accrual of unpaid franchise taxes, real estate taxes and water and sewer charges since 1994, which the Debtor admits are unpaid. As for assets, the Debtor's circumstance is no different than that which existed at the time of the 1994 dismissal: the Debtor has the same asset, a building that is generating no income which in turn cannot sustain payment of any employees, general maintenance, taxes or insurance, the last of which is paid only by means of advances from the Debtor's princi-

pal. At bottom, the only changed circumstance that I can find is the claimed increase in value of the underlying asset, the property itself, through market forces for which the Debtor can take no credit, but which the Debtor argues merit an opportunity to use chapter 11 to sell the property. And, as discussed, the probative value of Mr. Iveli's opinion is questionable, at best.

All that has happened in the last 2½ years since dismissal is the attempted eviction of the last remaining tenant in the building. The Debtor has not taken any actions to prepare the building for potential sale; nor has it paid its taxes or mortgage. Neither has it identified any offerors to purchase the property despite the claimed renaissance of the Chelsea neighborhood.

This case resembles *In re American Property Corp.,* 44 B.R. 180 (Bankr.M.D.Fla. 1984), in which title was taken to undeveloped real property by a previously dormant corporation. At the time of the purchase the debtor knew that the property was subject to foreclosure by the lienholder. Between the time the property was acquired and the filing of the bankruptcy petition nine months later, the debtor attempted to have it rezoned, but these efforts proved unsuccessful. The debtor did not make any payments to the lienholder or take any action to improve the property, its principal asset. In considering a motion to lift the stay, the court found that the debtor did not conduct any business "in the orthodox sense other than speculating in real estate." *Id.* at 182. This finding led to the court's conclusion that the case had been filed in bad faith: "clearly, bad faith is shown if the purpose of a chapter 11 debtor is to hold a single asset 'hostage' in order to speculate that such asset may increase in value in order to recover its original investment at the creditor's risk." *Id.* (citations omitted); *see also Carolin Corp. v. Miller,* 886 F.2d at 705 (4th Cir.1989); *In re Powers,* 135 B.R. 980 (Bankr.C.D.Cal.1991).

It is important to draw a distinction here. On the one hand, there is nothing inimical to the purposes of the Bankruptcy Code in the

---

**1.** The primary challenge in a single asset real estate case is providing for the claims of secured creditors.

shrewd identification of the net present value and hidden potential for successful rehabilitation of a struggling business. *Carolin Corp. v. Miller,* 886 F.2d 693, 705 (4th Cir.1989). On the other hand, a debtor shows bad faith when it uses bankruptcy protection for risk-free speculation in the single asset. A court must vigilantly protect the integrity of the judicial process and the interests of secured creditors to ensure that reorganization is being sought and that the debtor is not simply gambling with the creditor's money. *Id.*; *American Property Corp.,* 44 B.R. 180.

But gambling is precisely what this Debtor is doing. For over two years since the dismissal of the previous case, the Debtor has not paid the secured creditors, paid taxes or sold the property. It has no employees and has conducted no business other than attempting to evict the final tenant. Only with a foreclosure sale looming which would have divested the Debtor of its property did the Debtor spring into action by recording a deed that confirmed the transfer of the property to it by the 1992 debtor that had allegedly occurred 4 months earlier. But this transaction was plainly effected solely in contemplation of filing for chapter 11 which would stay foreclosure and perhaps buy time to convince the court that a sale would generate greater value. Essentially, the Debtor has engaged in a speculative real estate venture at the creditors' expense by pinning its hope on a rebound in the Chelsea real estate market. Simply attempting to evict a tenant is not demonstrative of the Debtor's good faith when contrasted with the utter lack of other activity regarding the property. I would be more convinced of the Debtor's good faith if it had demonstrated, for example, that it had marketed the building and had many expressions of interest, or it had obtained an offer from a potential purchaser or it had cured violations against the property. Instead, it embarked on a course of conduct that was calculated solely to frustrate foreclosure.

There are other indicia of bad faith as well. *See C–TC,* 113 F.3d at 1311 (listing the eight factors from *Pleasant Pointe Apartments, Ltd. v. Kentucky Housing Corp.,* 139 B.R. 828, 832 (W.D.Ky.1982)). Of these factors, seven are unquestionably applicable to the Debtor here. One, the Debtor has only one asset, the property at 236 W. 22nd Street. Two, this sole asset is the subject of a foreclosure action as a result of arrearages on the secured debt. Three, the Debtor's financial condition is essentially a two party dispute that can be resolved in the pending state foreclosure action. Eileen Zuckerman is prepared to renotice the foreclosure and provide for the turnover or distribution of any surplus to the Debtor. Four, the timing of the Debtor's filing evinces an intent to delay or frustrate the legitimate efforts of its secured creditor to enforce its rights. This is especially true in light of the fact that the Debtor recorded its deed to the property the day before it filed for chapter 11, which itself was the day before the foreclosure sale. This sequence of events leaves little doubt that the Debtor timed its acts to ensure that it could avail itself of bankruptcy, thereby invoking the automatic stay to stop the sale. Five, the debtor has little or no cash flow; six, the debtor has no employees, and finally, seven, the Debtor cannot meet its current expenses. No one has disputed the fact that the Debtor meets these final three conditions as it will only be able to pay insurance and heat the building thanks to advances from its principal. The only factor mentioned in *C–TC* not yet discussed is that the Debtor has few unsecured creditors (other than perhaps Albert Zuckerman) whose debt is small relative to the secured debt. The Debtor scheduled only a $4,500 claim to Con Edison. It is also probably liable for franchise taxes. But these debts are certainly small in comparison to the secured debt of at least $212,000.

The 1992 debtor's petition was dismissed on the grounds of its inability to reorganize. I have concluded that the Debtor filed this case solely to thwart the foreclosure sale that Eileen Zuckerman had noticed for the next day. In the intervening 2½ years between dismissal of the first case and the commencement of this one, the Debtor did nothing to improve its economic situation or change its circumstances to warrant keeping the stay in effect. The only action the Debtor has taken is to try to evict a tenant, which it has not yet accomplished. The shareholders have

simply waited for the real estate market to improve so that they could cash in on the appreciation of the property.

A finding of bad faith must be made only after broadly viewing the circumstances of the individual case. *In re Con Am Grandview Assocs., L.P.*, 179 B.R. 29, 32 (S.D.N.Y. 1995). Looking at the totality of circumstances here, I conclude that Eileen Zuckerman has demonstrated bad faith sufficient to warrant lifting the automatic stay. As a result, I need not address her other arguments. The Debtor has failed to carry its burden of proof that stay relief is not warranted. Eileen Zuckerman's motion is GRANTED. SETTLE ORDER consistent with this decision.