**In re 68 WEST 127 STREET, LLC, Debtor.**

**No. 02–42060 (RDD).**

United States Bankruptcy Court,
S.D. New York.

Nov. 19, 2002.

Carus & Manniello, P.C., by Barry R. Carus, Syosset, NY, for The Bank of New York, as Trustee.

Coritsidis & Lambros, PLLC, by Michael N. Coritsidis, New York City, for the Debtor.

*MEMORANDUM OPINION ON MOTION OF THE BANK OF NEW YORK, AS TRUSTEE FOR RELIEF FROM THE AUTOMATIC STAY*

ROBERT D. DRAIN, Bankruptcy Judge.

The debtor and debtor in possession ("Debtor") filed its chapter 11 petition on the morning of the day that its only asset, an empty, derelict residential building in Harlem, was scheduled to be sold at judicial foreclosure. The Bank of New York, as Trustee ("BONY"), requested relief from the automatic stay under section 362(a) of the Bankruptcy Code to resume

its foreclosure sale in respect of its first mortgage on the building.

BONY contends that the automatic stay should be lifted under section 362(d)(1) of the Code because the Debtor sought relief under the Bankruptcy Code in bad faith. BONY also contends that relief from the automatic stay should be granted under section 362(d)(2) of the Code because the Debtor has no equity in the building and it is not necessary to an effective reorganization under chapter 11.

Many, if not all, of the factors frequently cited as indicia of a debtor's bad faith are present. However, the Debtor has carried its burden on the key issue. The Debtor is working within chapter 11's constraints, having reasonably established that it can effectively reorganize in a reasonable time, and, therefore, is not misusing chapter 11 merely to frustrate its secured creditor. Consequently, the delay imposed by the automatic stay is justified and BONY's motion is denied.

## FACTS

The facts are almost exclusively based on affidavits and exhibits submitted by the parties.

On July 22, 1999 Quenna Moore, then the building's owner, issued a $252,000 note and first mortgage on the building to an entity that later assigned the note and mortgage to BONY. Following Ms. Moore's default on the note, the Supreme Court of the State of New York granted BONY's motion for summary judgment in BONY's foreclosure proceeding on November 13, 2001 and on April 22, 2002 issued a judgment of foreclosure and sale. BONY

scheduled the foreclosure sale for July 10, 2002, but the Debtor, by then the owner of the building, filed its chapter 11 petition that morning.

Ms. Moore had sold the building to the Debtor shortly before the scheduled foreclosure sale, without BONY's knowledge. Parties facing foreclosure sometimes make such transfers to related entities in a not very subtle attempt to facilitate their control of property by muddying title. The Debtor's principals are not related to or affiliated with Ms. Moore, however, and the July 2, 2002 transfer to the Debtor does not appear to have been undertaken to shield Ms. Moore or her other assets or otherwise to harm BONY. Ms. Moore's note to BONY is full recourse, and the assignment did not relieve her of any liability.[1] BONY nevertheless has taken no action to collect from Ms. Moore, and BONY acknowledged that it was not prejudiced by her transfer to the Debtor, or by the Debtor's day-of-foreclosure filing, for that matter, with the exception of the resulting delay imposed by the automatic stay and the cost of seeking relief under section 362(d) of the Bankruptcy Code. BONY acknowledged that had the building not been transferred, it is likely that Ms. Moore also could have filed a bankruptcy petition that would have stayed the foreclosure sale.

BONY offered no evidence of the value of the building other than agreeing with the Debtor's submissions that the Debtor has no equity in the collateral: that is, BONY admitted that the value of the building is less than the amount of its prepetition claim.[2] The Debtor's sched-

---

1. Because section 1111(b)(1)(A) of the Bankruptcy Code in essence converts secured non-recourse obligations to recourse obligations, an eve-of-foreclosure transfer to a related single-purpose entity of collateral securing a non-recourse note permits bankruptcy relief

for the transferred property while shielding the original obligor's other assets, in which the obligor may have substantial equity.

2. At the final hearing, BONY was not able to establish the total amount owed on the bank-

ules admit that the value of the building is $250,000. An affidavit submitted in opposition to BONY's motion by Maurice Enbar, a principal of the Debtor and a licensed real estate broker who has specialized in the sale and rental of Manhattan real estate since 1995, states that the Debtor's proposals, "i.e. $250,000 to $300,000[, are] equal to or greater than the value of the collateral."

Although the building has apparently been empty for years, and the Debtor has no income, the Debtor wants to rehabilitate the building, having experience in this area. In the past three years Mr. Enbar has been involved in the purchase of at least eight properties in Harlem.

The Debtor has consistently proposed to pay BONY, from capital contributions and refinancing, what the Debtor asserts is the fair value of BONY's mortgage. Soon after buying the building, the Debtor offered to pay BONY $250,369, which the parties agree is the outstanding principal balance of the note, in satisfaction of the judgment. Receiving no response, on July 8 and 9, 2002 the Debtor made additional proposals to BONY, ultimately increasing its offer to $301,000. After the chapter 11 filing, the Debtor reiterated this proposal, but BONY apparently did not address it, except by filing its lift-stay motion.

At the preliminary hearing, the Debtor stated that it would continue to try to pay BONY the value of BONY's interest in the building by filing a "new value" chapter 11 plan in which its principals would buy the building for its fair value, the cash purchase price satisfying administrative, priority and secured claims including BONY's first mortgage claim.

Before the final hearing, the Debtor filed such a new value plan, under which the Debtor's principals would pay $175,000 into the estate and either guarantee a new $175,000 first mortgage loan or pay another $175,000 into the estate themselves if such loan cannot be obtained. With that $350,000, the Debtor would pay the handful of administrative and priority claims (except for one voluntarily reduced priority claim) and secured claims (including tax liens), with $250,000 going to satisfy BONY's secured claim based on the asserted value of its first mortgage interest. Thus, the plan would seek a valuation of BONY's first mortgage interest under section 506(a) of the Bankruptcy Code at $250,000. The plan provides for no recovery by the Debtor's few unsecured creditors.

At the final hearing, the Debtor agreed to terminate its exclusive periods under section 1121 of the Bankruptcy Code or otherwise to satisfy the requirement of *Bank of Am. Nat'l Trust and Sav. Assn. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 449, 453, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999), and *Coltex Loop Cent. Three Partners, L.P. v. BT/SAP Pool C Assocs. (In re Coltex Loop Cent. Three Partners, L.P.)*, 138 F.3d 39, 46 (2d Cir.1998), that its principals not have the *exclusive* option to purchase the building.

Also at the final hearing, the Court conditioned the continuation of the automatic stay on the Debtor's prompt submission of an executed commitment by one or more of its principals to fund the plan. This the Debtor did by filing an affidavit by Steven Kamhi agreeing to pay $175,000 as provided in the plan as well as committing to guarantee or underwrite the additional $175,000. Attached as an exhibit to Mr.

---

ruptcy petition date, although it claimed that it was owed in excess of $328,000, including interest and fees. BONY's foreclosure judg-

ment was in the amount of $283,512.44, plus interest from November 14, 2001.

Kamhi's affidavit was a bank statement showing that he has liquid assets in excess of $700,000.

## DISCUSSION

BONY seeks relief under section 362(d)(1) of the Bankruptcy Code for cause.[3] BONY does not assert that its interest in the building is not adequately protected. BONY does not contend that the building is declining in value. It also does not challenge the Debtor's assertion that the building is secure from vandalism. (At the final hearing the United States Trustee, who took no position on BONY's motion, confirmed receipt of satisfactory evidence of continued insurance on the building, as well as stated that the Debtor has timely filed its schedules and operating reports.) Instead, the cause alleged by BONY under section 362(d)(1) is the Debtor's alleged bad faith in seeking relief under chapter 11.

BONY also requests that the automatic stay be lifted under section 362(d)(2) of the Bankruptcy Code, asserting that the Debtor has no equity in the building and that the building is not necessary for an effective reorganization.[4]

Given the building at issue and the time between the start of the bankruptcy case and the final hearing on BONY's motion, the Court also considered whether the stay should be lifted under section 362(d)(3) of the Bankruptcy Code, which provides in relevant part that relief from the automatic stay of an act against "single asset real estate" by a creditor secured thereby shall be granted unless, not later than the 90 days after the start of the bankruptcy case or such later date as the Court may determine for cause, the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time.[5]

The Debtor responds that, although it has no equity in the building, the building is necessary for its effective reorganization, which it can effectively and promptly accomplish under its proposed chapter 11 plan. The Debtor therefore contends that it is pursuing its rights under the Bankruptcy Code in good faith.

### Summary

While in the light of the various "bad faith factors" discussed below BONY has established a *prima facie* case for stay relief, *see Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d. Cir.1990) (movant's failure to make an initial showing of cause under section 362(d)(1) "warrants denial of the motion and should relieve the debtor from having to go forward with any proof"), the Debtor has carried its burden of persuasion under section

---

**3.** Section 362(d)(1) provides that "the court shall grant relief from the stay ... for cause, including the lack of adequate protection of an interest in property of such party in interest."

**4.** Section 362(d)(2) provides that the court shall grant relief from the automatic stay of an act against property "if—(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization."

**5.** 11 U.S.C. § 362(d)(3)(A). The building apparently qualifies as single asset real estate

under section 101(51B) of the Bankruptcy Code. The Debtor's bankruptcy case began on July 10, 2002 and the parties agreed to adjourn the final hearing on BONY's motion (BONY having waived its rights under 11 U.S.C. § 362(e) until the date of the hearing) to October 22, 2002, thus bringing section 362(d)(3)'s 90–day period into play. Section 362(d)(3) is not a secured creditor's exclusive remedy in this situation. It does not supersede sections 362(d)(1) and (2). *In re 234–6 West 22nd St. Corp.*, 214 B.R. 751, 754–55 (Bankr.S.D.N.Y.1997).

362(g) of the Bankruptcy Code. That is, the Debtor has established that it is using the Bankruptcy Code for the valid purpose of confirming a chapter 11 plan and that there is a reasonable possibility of a successful reorganization within a reasonable time. *See, e.g., C–TC 9th Ave. P'ship v. Norton Co. (In re C–TC 9th Ave. P'ship),* 113 F.3d 1304, 1310 (2d Cir.1997) (finding bad faith "[w]hen it is clear that, from the date of the filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing"); *United Sav. Ass'n v. Timbers of Inwood Forest Assocs. Ltd.,* 484 U.S. 365, 375–76, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (construing "effective reorganization" under section 362(d)(2) as requiring that there be "a reasonable possibility of a successful reorganization within a reasonable time"); 11 U.S.C. § 362(d)(3)(A) (debtor must have filed a plan "that has a reasonable possibility of being confirmed within a reasonable time").

### Bad Faith as "Cause" Under Section 362(d)(1)

■ Although not expressly stated in section 362(d)(1), it is well established that a debtor's bad faith constitutes "cause" for relief from the automatic stay under that section. *In re AMC Realty Corp.,* 270 B.R. 132, 140–41 (Bankr.S.D.N.Y.2001); *see also In re Trident Assoc., Ltd.,* 52 F.3d 127, 131 (6th Cir.1995), *cert. denied,* 516 U.S. 869, 116 S.Ct. 188, 133 L.Ed.2d 125 (1995). The Bankruptcy Code does not define bad faith, or its opposite, good faith, however, and it is difficult to find a consistent approach in all of the scores of reported decisions on the issue. *See In re PPI Enter. (U.S.), Inc.,* 228 B.R. 339, 344 (Bankr.D.Del.1998) (tracing "conflicting maze of case law").

Courts often list numerous factors indicating a debtor's bad faith, which "are not substantively different from each other" whether used in the context of a motion to dismiss the underlying bankruptcy case under section 1112(b) of the Bankruptcy Code or a motion for relief from the automatic stay under section 362(d)(1). *In re AMC Realty,* 270 B.R. at 141 (quoting *In re 234–6 West 22nd St.,* 214 B.R. at 757).

■ The Second Circuit has summarized such factors as follows:

1. the debtor has only one asset;

2. the debtor has few unsecured creditors, whose claims are small in relation to those of the secured creditors;

3. the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

4. the debtor's financial condition is, in essence a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

5. the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

6. the debtor has little or no cash flow;

7. the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

8. the debtor has no employees.

*In re C–TC 9th Ave. P'ship,* 113 F.3d at 1311. Each of these factors, with the apparent exception of the inability to meet current expenses, applies to the Debtor. *See also In re Shar,* 253 B.R. 621, 630 nn. 5, 6 (Bankr.D.N.J.1999), which discusses other courts' lists of "bad faith factors," including, in addition to the factors listed above, that (1) a corporate debtor was formed and received title to its major assets shortly before the bankruptcy peti-

tion—which applies to the Debtor—and (2) the debtor or a related entity has previously filed bankruptcy—which is not true of the Debtor.

The courts repeatedly caution, however, not to apply such factors mechanically. *Id.* at 629 (citing numerous cases for the proposition that "[t]he existence of 'bad faith' depends not on any one specific factor but on a combination of factors determined after careful examination of the facts of the particular debtor's case"); *see also In re Willows of Coventry Ltd. P'ship,* 154 B.R. 959, 967 (Bankr.N.D.Ind.1993) (citing cases) ("Indeed, the mechanical approach ... would automatically doom almost every single asset case, ab initio."). As Judge Brozman noted in *In re 234–6 West 22nd St.,* "[W]hen faced with a motion to lift the stay on bad faith grounds, ... the relief sought is an extraordinary remedy that requires careful examination of the facts on a case-by-case basis." 214 B.R. at 757.

▮ Lists of such factors, then, ultimately do no more than assist the exercise of discretion in deciding when a debtor has improperly invoked the Bankruptcy Code, or is improperly hiding behind the automatic stay to speculate with the creditor's collateral, because it is not able, or not trying, to confirm a chapter 11 plan. *See C–TC 9th Ave. P'ship,* 113 F.3d at 1310 (a debtor is in bad faith "[w]hen it is clear that from the date of the filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing"); *Baker v. Latham Sparrowbush Assoc. (In re Cohoes Indust. Terminal, Inc.),* 931 F.2d 222, 227 (2d Cir.1991) (bad faith consists of there

being no reasonable likelihood on the filing date that the debtor intended to reorganize [6] and no reasonable probability that it would eventually emerge from bankruptcy); *In re 234–6 W. 22nd St.,* 214 B.R. at 759–60 (debtor was simply gambling with collateral, having failed to take affirmative steps for a successful reorganization).

Keeping the primary focus on the permissible uses of the Bankruptcy Code is important because, taken out of context, the exercise of certain rights under the Code that are perfectly legitimate may appear hurtful, even malicious, yet the exercise of a statutory right or remedy should rarely, if ever, be said to be in bad faith. As stated by Judge Fox in *In re Clinton Centrifuge, Inc.,* 72 B.R. 900, 905 (Bankr.E.D.Pa.1987):

> In engrafting the good faith requirement into the Code, courts must be careful not to upset the delicate balance of interests fashioned by Congress under chapter 11. Moreover, to the extent that the concept of good faith exists independent of other Code provisions (such as adequate protection), courts must be vigilant to apply this concept in ways consistent with the legislative policy decisions embodied in these other [Code] enactments. Thus, in evaluating a debtor's good faith, the court's only inquiry is to determine whether the debtor seeks to abuse the bankruptcy law by employing it for a purpose for which it was not intended. When a debtor is motivated by plausible, legitimate reorganization (or liquidation) purposes and not solely or predominantly by the mere desire to prevent foreclosure or hinder creditors, bad faith is not present in a chapter 11 case.

---

**6.** Particularly when other parties' interests are affected, however, the debtor's *motives* in seeking relief under the Bankruptcy Code are less important because the filing is a much for the benefit of creditors and, perhaps, third-party equity holders as the debtor. *In re Johns–Manville Corp.,* 36 B.R. 727, 737 (Bankr.S.D.N.Y.1984), *mandamus denied sub nom. In re Committee of Asbestos–Related Litigants,* 749 F.2d 3 (2d Cir.1984).

For example, in bankruptcy, an undersecured claim is reduced to the value of the collateral (11 U.S.C. § 506(a)), with the unsecured portion of the claim susceptible to receiving no distribution (11 U.S.C. § 1129(b)(2)(B)), and a secured creditor is not entitled to adequate protection simply because the automatic stay postpones the enforcement of its rights, even if, being undersecured, it will not have a claim for the interest accruing during the delay caused by the automatic stay. 11 U.S.C. § 502(b)(2); *Timbers of Inwood Forest Assoc.*, 484 U.S. at 373–75, 108 S.Ct. 626. Similarly, in bankruptcy a debtor can breach prepetition contracts (11 U.S.C. § 365(a), (g)); indeed, the debtor has a fiduciary duty to do so if that benefits the estate. *See In re PPI Enter.*, 228 B.R. at 345, in which the court held that a debtor filing bankruptcy with the intention of rejecting a lease in order to cap the rejection claim under section 502(b)(2) of the Bankruptcy Code was using the Code as intended and, therefore, was not in bad faith. As noted by Judge Walsh in *PPI Enter.*, "[I]n enacting the Code, Congress has already made certain determinations of what is 'fair' by mandating what procedural and substantive curtailments of rights . . . will apply to creditors and other parties in interest." *Id. See also In re James Wilson Assocs.*, 965 F.2d 160, 170 (7th Cir. 1992) ("It is not bad faith to seek to gain an advantage from declaring bankruptcy-why else would one declare it?").

The Supreme Court has consistently applied the plain language of the Bankruptcy Code even when the result might appear inequitable in a non-bankruptcy setting, including when such result might violate

one or more of the bad faith factors listed above. *See, e.g., Toibb v. Radloff*, 501 U.S. 157, 161, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991) (Bankruptcy Code has no ongoing business requirement for chapter 11 eligibility); *Johnson v. Home State Bank*, 501 U.S. 78, 86, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (eve-of-foreclosure chapter 13 filing permissible to obtain superdischarge, of *in rem* claim, despite prior chapter 7 case that discharged *in personam* claim).[7]

Moreover, notwithstanding the routinely cited bad faith factor of an eve-of-foreclosure bankruptcy filing, apparently *no* court has applied that factor in isolation to find bad faith. Indeed, several courts have observed that resort to bankruptcy to stave off foreclosure is consistent with bankruptcy's goals of preserving going concerns and maximizing value:[8]

Filing a bankruptcy petition with the intent to frustrate creditors does not by itself establish an absence of intent to seek rehabilitation. Indeed, because a major purpose behind our bankruptcy laws is to afford a debtor some breathing room from creditors, it is almost inevitable that creditors will, in some sense be "frustrated" when their debtor files a bankruptcy petition. In reality, there is a considerable gap between delaying creditors, on the eve of foreclosure and the concept of abuse of judicial purpose.

*In re Cohoes Indust. Terminal*, 931 F.2d at 228 (citations omitted); *see also Cinema Service Corp. v. Edbee Corp.*, 774 F.2d 584, 586 (3d Cir.1985) ("An attempt to stop a sheriff's sale, if undertaken pursuant to a

---

7. On remand, the court determined that the subsequent chapter 13 case was filed in good faith. *In re Johnson*, 1991 WL 284110, 1991 U.S. Dist. LEXIS 18769 (D.Kan. Dec. 5, 1991).

8. *LaSalle*, 526 U.S. at 453, 119 S.Ct. 1411 (referring to "the two recognized policies underlying Chapter 11, of preserving going concerns and maximizing property available to satisfy creditors," citing *Toibb v. Radloff*, 501 U.S. at 163, 111 S.Ct. 2197).

legitimate effort at reorganization, is not reprehensible and is in accord with the aim of the Bankruptcy Code.").

Similar observations may be made about other commonly listed bad faith factors. *See, e.g., In re Kingston Square Assocs.,* 214 B.R. 713, 734, 736–37 (Bankr.S.D.N.Y. 1997) (eve-of-foreclosure filing was not in bad faith, despite circumvention of "bankruptcy remote" board structure imposed by primary, secured creditor, because bankruptcy preserved value for handful of unsecured creditors and debtor's limited partners); *In re Foundry of Barrington P'ship,* 129 B.R. 550, 556 (Bankr.N.D.Ill. 1991) (fully encumbered single-asset debtor with few non-insider creditors was not in bad faith, because debtor had a reasonable prospect, supported by evidence of active negotiations with several prospective tenants, of confirming a plan); *In re Levinsky,* 23 B.R. 210, 218–219 (Bankr. E.D.N.Y.1982) (debtor was not in bad faith notwithstanding eve-of-bankruptcy transfer of property to newly formed entity with minimal unsecured debt, because transfer did not impair any substantive or procedural right of the complaining creditor).

▆▆▆ It may be argued in response that the Bankruptcy Code expressly limits the potentially invidious effects of its own provisions by incorporating a non-specific "for cause" standard in sections 362(d)(1) and 1112(b). However, the cases discussed above highlight that the presence of "bad faith factors" should, at most, only heighten one's sensitivity to the possibility that a creditor is entitled to relief from the automatic stay. (It is not even a question of shifting the burden of persuasion to the debtor, as might be the case under section 1112(b), because the debtor already has that burden, with the exception of the issue of its equity in the collateral, under section 362(g) of the Code, although the

presence of several bad faith factors can establish the creditor's *prima facie* case. *In re Yukon Enter., Inc.,* 39 B.R. 919, 921–22 (Bankr.C.D.Cal.1984).) The critical test of a debtor's bad faith remains whether on the filing date there was no reasonable likelihood that the debtor intended to reorganize and whether there is no reasonable possibility that the debtor will emerge from bankruptcy. *See In re Sletteland,* 260 B.R. 657, 662 (2001) (construing *C–TC 9th Ave. P'ship* and *In re Cohoes Indust. Terminal* ); *In re Kingston Square,* 214 B.R. at 725.

In practice, cases relying on "bad faith" therefore generally hinge on reasons that also would satisfy the specifically listed criteria in sections 362(d)(2) and 362(d)(3) of the Bankruptcy Code, or on several of the specific criteria in sections 1112(b)(1)-(10), as the case may be. *In re Gucci,* 174 B.R. 401, 410 (Bankr.S.D.N.Y.1994). *See also* 3 COLLIER ON BANKRUPTCY ¶ 362.07[6][a] (15th ed.2002), at 362–105 (noting that Congress' enactment of section 362(d)(3) recognizes the propriety of reorganization by "single asset real estate" debtors, absent extraordinary circumstances, notwithstanding their violation of most of the commonly listed bad faith factors out of the gate).

▆▆▆ This substantial overlap with sections 362(d)(2) and 362(d)(3) is especially the case in jurisdictions where "cause" cannot be based simply on the debtor's subjective intent. *Compare In re Carolin Corp. v. Miller,* 886 F.2d 693, 700 (4th Cir.1989) ("we agree with those courts that require *both* objective futility and subjective bad faith") (emphasis in original), *and In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393, 1394 (11th Cir.1988) ("The possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith."). This Circuit's precedent apparently follows the former, *Ca-*

*rolin* standard, *see In re Cohoes Indust. Terminal,* 931 F.2d at 227; *In re Kingston Square,* 214 B.R. at 725; *In re Gucci,* 174 B.R. at 410, although a debtor's behavior can be so egregious-especially in a two-party case or a case in which the other parties in interest do not oppose the creditor's requested relief-that there may be no need to look into the possibility of a debtor's equity in the collateral or the reasonable likelihood of the debtor confirming a chapter 11 plan in a reasonable time. *In re Briarpatch Film Corp.,* 281 B.R. 820, 834 (Bankr.S.D.N.Y.2002) (debtor was in bad faith when only reason for its filing bankruptcy was to relitigate merits of state court decision; proper remedy was to appeal in state court); *In re Eclair Bakery Ltd.,* 255 B.R. 121, 137–40 (Bankr. S.D.N.Y.2000) (newly incorporated debtor was in bad faith because it had received affiliated debtor's property to circumvent earlier bankruptcy court order prohibiting transferor's serial bankruptcy filing). *See also* 7 COLLIER ON BANKRUPTCY ¶ 1112.07[6][a]-[b], at 1112–72–76 (arguing pros and cons of dismissing case for bad behavior notwithstanding ability to reorganize). Nevertheless, if a debtor can show that the collateral is adequately protected and that it meets section 362(d)(2)(B) of the Code, a secured creditor should not obtain stay relief to foreclose absent extraordinary circumstances. Secured creditors generally are better off relying on the Bankruptcy Code's many provisions specifically protecting collateral as fairly valued (11 U.S.C. §§ 362(d), 506(a), 1111(b), 1129(b)(2)(A)), as well as other provisions governing debtor misconduct (11 U.S.C. §§ 523(a) (for individual debtors), 544, 548, 1104(a)) and delay (11 U.S.C. §§ 362(d)(2)(B), 362(d)(3)(A), 1112(b)(3), 1121(d)) than on vague assertions of bad faith.

■ Extraordinary circumstances are not present here to override the fact that the Debtor is pursuing a course of action that, as discussed below, has a reasonable possibility of ending in a confirmed chapter 11 plan. Although the Debtor is not currently earning income, it is beyond doubt that restructuring its balance sheet to facilitate the rehabilitation of a derelict residential building is a permissible chapter 11 goal. *See In re Nevada Towers Assocs.,* 14 C.B.C (MB) 146 (Bankr. S.D.N.Y.1977) (automatic stay not lifted on incomplete apartment project, where limited partners offered to provide funds to finish construction). As noted, BONY was not harmed by the Debtor's purchase of the building shortly before the chapter 11 filing. *In re Levinsky,* 23 B.R. at 218–219. (Indeed, now BONY has two obligors.) *See also Carolin Corp. v. Miller,* 886 F.2d at 704, in which the court reasoned that "an investor's manifest 'entrepreneurial motive' in seeking the protection of Chapter 11 for a newly purchased entity would, standing alone, not suffice to establish [a] subjective lack of good faith" and that such a transfer actually would further chapter 11's purposes by bringing in new investors and management expertise. The Debtor is not trying to relitigate the foreclosure judgment, only to restructure it, and, finally, the Debtor is not a repeat bankruptcy filer.

### *Effective Reorganization/Successful Reorganization*

■ Having met the good faith standard under section 362(d)(1), the Debtor also has satisfied the similar, if not identical, standards of sections 362(d)(2)(B) and 362(d)(3)(A) of the Bankruptcy Code. Those sections' references to an "effective reorganization"[9] and a "plan of reorgani-

---

9. As the Debtor's only asset, the building

clearly is *necessary* for the Debtor's reorgani-

zation that has a reasonable possibility of being confirmed within a reasonable time" do not require a determination that the Debtor's plan shall be confirmed. At this time the Debtor must show only that its plan has a reasonable prospect of success within a reasonable time. *Pegasus Agency v. Grammatikakis (In re Pegasus Agency, Inc.)*, 101 F.3d 882, 886 (2nd Cir.1996) (construing 11 U.S.C. § 362(d)(2)(B) and *Timbers of Inwood,* 484 U.S. at 375–76, 108 S.Ct. 626). The same applies under the plain terms of section 362(d)(3)(A).

█ Based on the record, the valuation underlying the Debtor's plan is credible, as is the assumption that the Debtor's principals will contribute the contemplated new value. The "new value" plan also is premised on a legal theory under 11 U.S.C. § 1129(b)(2)(B)(ii) and *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 118, 60 S.Ct. 1, 84 L.Ed. 110 (1939), that, if not endorsed by the Supreme Court in *203 N. LaSalle,* continues to carry considerable validity for the reasons stated in that opinion and the authorities discussed therein. 526 U.S. at 443, 449, 453, 119 S.Ct. 1411. The Debtor's plan therefore is not mere speculation. *In re Pegasus Agency,* 101 F.3d at 887. The Debtor has earned the right at least to make the case for confirmation of its plan.

Accordingly, BONY's motion is denied. The Court has entered an order consistent with this opinion.