In re AL & LP REALTY CO., Debtor.

Bankruptcy No. 92 B 46908 (JLG).

United States Bankruptcy Court, S.D. New York.

Feb. 14, 1994.

Neiman Ginsburg & Mairanz, P.C., New York City, for debtor.

Robinson Brog Leinward Reich Genovese & Gluck, P.C., New York City, for Arch Assets, Inc.

*MEMORANDUM DECISION DENYING DEBTOR'S RULE 60(B)(6) MOTION FOR ORDER MODIFYING STIPULATION AND ORDER*

JAMES L. GARRITY, Jr., Bankruptcy Judge.

AL & LP Realty Co. ("debtor") has moved this court pursuant to Fed.R.Civ.P. 60(b)(6), as made applicable herein by Bankruptcy Rule 9024, for an order modifying a so-ordered stipulation among debtor and Arch Assets, Inc. ("Arch"), its largest creditor. Because debtor has not demonstrated cause for relief under Rule 60(b)(6), the motion is denied.[1]

---

1. This Memorandum Decision constitutes our findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(c), as made applicable herein by Bankruptcy Rules 7052 and 9014. Our subject matter jurisdiction of this matter is based on 28 U.S.C. §§ 1334(b) and 157(a), and the "Stand-

*Facts*

The facts are not in dispute. Debtor is a New York limited partnership whose sole asset is a building ("Building") located at 2 West 120th Street, New York, New York. Arch is debtor's largest creditor. Its claim originated in a $825,000 loan made to debtor in December 1989. That loan was evidenced by a note and was secured by a mortgage on the Building. In December 1990, the parties increased the principal amount of the Arch note to $1,290,000. Debtor defaulted under the note and it matured on June 6, 1992.

Arch did not extended the note's maturity date and, on or about July 6, 1992, declared the balance remaining on the note as due and payable. Debtor failed to make payment and on November 10, 1992, Arch commenced an action to foreclose its mortgage (the "Foreclosure Action") in the New York State Supreme Court. By order of the state court dated December 2, 1992, Joyce Hartsfield, Esq., (the "Receiver"), purportedly was appointed to be receiver of the rents and profits of the Building.

On December 14, 1992, debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code (the "Code"). Immediately thereafter, Arch moved by Order to Show Cause for an order pursuant to § 543(d) of the Code excusing the Receiver from turning over the Building to debtor. Debtor cross-moved under § 543(b) to compel the Receiver to surrender the Building. The parties agreed that the Receiver would remain in possession pending resolution of the motions. On or about April 1, 1993, Arch moved for relief from the automatic stay to prosecute the Foreclosure Action.

Thereafter, the parties commenced settlement negotiations. That protracted dialogue involved numerous meetings among the litigants' principals, as well as two chambers settlement conferences. On June 8, 1993, the parties reached an agreement in principle

ing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a contested matter. *See* 28 U.S.C. § 157(b)(2)(G).

to settle the motions. By August 1993, they had not finalized their agreement. On or about August 18, 1993, Arch, ascribing the delay in documenting the settlement to debtor's inattention and/or bad faith, moved to dismiss the case.

The parties agreed to adjourn the hearing on the motion to dismiss in favor of attempting to finalize the settlement document. They succeeded and after a chambers conference on September 22, 1993, we signed the "Stipulation and Order Modifying Automatic Stay" (the "Stipulation and Order") which effectively resolved all then pending motions. Among other things, in that document the parties agreed to continue the Receiver in possession of the Building and to modify the automatic stay to permit Arch to prosecute the Foreclosure Action to judgment. *See* Stipulation and Order, ¶¶ B and F. Debtor agreed to sign an irrevocable Notice of Appearance and Waiver in the Foreclosure Action and waived any defenses and counterclaims it otherwise could assert against Arch or the Receiver in that action. *Id.,* ¶¶ C and D. The parties fixed Arch's claim, as of June 30, 1992, in the sum of $1,621,122, and Arch agreed to accept payment of $942,000 in full satisfaction of that indebtedness, provided it was received on or before February 1, 1994. *Id.,* ¶¶ A and F. In the event payment was not timely made, the parties agreed that Arch would be entitled to full payment of its indebtedness and could settle an order on three days notice further modifying the stay to permit it to sell the Building in foreclosure. *Id.,* ¶¶ B and I.

When debtor executed the stipulation, it had neither adequate funds to pay off Arch nor access to such funding. Debtor contends that it can obtain needed financing from a New York City (the "City") organization it identifies as "C.P.C.", but that the loan will not be funded for at least 60 days. *See* Puretz Aff., ¶¶ 3 and 5.[2] Debtor further asserts that it initiated the loan process in September 1993, and that on or about January 12, 1994, it learned that due to bureaucratic delays the loan could not be approved by February 1, 1994. *Id.,* ¶¶ 3 and 4. Accordingly, debtor urges us to modify the Stipulation and Order to extend February 1, 1994 deadline for a period of 90 days.

### Discussion

Federal Rule Civil Procedure 60(b) is intended to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done. In *Nemaizer v. Baker,* 793 F.2d 58 (2d Cir.1986), the court described the rule's application, as follows:

> Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments. *House v. Secretary of Health and Human Services,* 688 F.2d 7, 9 (2d Cir.1982); *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 401 (5th Cir.1981). In other words, it should be broadly construed to do "substantial justice," *see Seven Elves,* 635 F.2d at 401, yet final judgments should not "be lightly reopened." *Id., Griffin v. Swim-Tech Corp.,* 722 F.2d 677, 680 (11th Cir. 1984).

793 F.2d at 61.

Rule 60(b)(6) is a catchall provision which is properly invoked only when the asserted ground for relief is not recognized in Rules 60(b)(1)–(5). *Nemaizer v. Baker,* 793 F.2d at 63; *Montico v. Barr (In re Emergency Beacon Corp.).,* 666 F.2d 754, 758 (2d Cir.1981). It states that the court "may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... (6) any other reason justifying relief from the operation of the judgment." *See* Fed.R.Civ.P. 60(b)(6). The motion "must be made within a reasonable time" of the date the judgment it seeks to modify becomes final. *See* Fed.R.Civ.P. 60(b); *see also*

---

**2.** "Puretz Aff." refers to the January 31, 1994 affidavit of Mr. Lieb Puretz, one of debtor's partners, submitted by debtor in support of its motion. As used herein, the term "Raboy Letter" refers to the January 14, 1994 letter of Harriet Raboy annexed as Exhibit "A" to the Puretz affidavit. That letter is addressed to a "Mr. Hirth" of "AL and LP Realty Co." and is written on the stationary of an entity identified as New York Rehab Corp. ("N.Y. Rehab"). Finally, the term "Neiman Aff." refers to the February 2, 1994 affidavit of Marvin Neiman, Esq., debtor's counsel, submitted in support of the motion.

*PRC Harris Inc. v. Boeing Co.,* 700 F.2d 894, 897 (2d Cir.) ("[i]n considering whether Rule 60(b)(6) motion is timely [court] must scrutinize the particular circumstances of the case, and balance the interest in finality with the reasons for delay"), *cert. denied* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983).

■ Although courts have broad discretion in applying the Rule 60(b)(6), *see, e.g., Connecticut Nat. Mortg. Co. v. Brandstatter,* 897 F.2d 883, 884 (7th Cir.1990), relief should not be granted unless movant shows exceptional or extraordinary circumstances, *see Ackermann v. United States,* 340 U.S. 193, 199–202, 71 S.Ct. 209, 212–13, 95 L.Ed. 207 (1950); *Matarese v. Le Fevre,* 801 F.2d 98, 106 (2d Cir.1986), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987), or extreme and undue hardship. *See Nemaizer v. Baker,* 793 F.2d at 63 (citing *United States v. Karahalias,* 205 F.2d 331, 333 (2d Cir. 1953)).

■ Where, as here, "the parties submitted to an agreed-upon disposition instead of seeking a resolution on the merits … the burden to obtain Rule 60(b) relief is heavier than if one party proceeded to trial, lost, and failed to appeal." *Id.; see also In re Huff,* 118 B.R. 146, 148 (Bankr.S.D.Fla.1990) ("[b]ecause settlements are favored in federal law and 'the prompt resolution of claims and disputes makes the compromise of claims of particular importance in a bankruptcy reorganization', settlement of bankruptcy claims should be liberally construed and a stricter standard is applied to a Rule 60(b) motion in this context") (citation omitted).

■ Debtor failed to prove that extraordinary or exceptional circumstances justify the relief requested. Debtor adduced no evidence of its efforts to obtain financing, save for Puretz's unsupported statement that debtor had filed an application with C.P.C. in September 1993. *See* Puretz Aff., ¶ 3. At the hearing on the motion, debtor's counsel could not identify the City agency or department allegedly designated as "C.P.C.", or even explain (let alone prove) either the pro-

cedures governing the loan program or the steps taken by debtor to comply with the procedures. Further, although Mr. Puretz represented that N.Y. Rehab is a City agency, *see* Puretz Aff., ¶¶ 4 and 5, at the hearing Arch's counsel contended, and debtor did not deny, that it is actually a private mortgage broker. Accordingly, we attach little weight to the statements in the affidavit or the Raboy Letter. Even if fully credited, however, they do not establish either that a loan will be funded by the City or that the City's delay prevented debtor from obtaining financing by February 1, 1994. For example, Ms. Raboy merely states that a loan "should be approved", although she cautions that the loan request is "being worked on" and that there is "no definite closing [date]". *See* Raboy Letter. Regarding the City's delay in processing the loan request, Ms. Raboy only observes that N.Y. Rehab has "found that when there is a change of administration things seem to be held up a little longer." *Id.*[3] Even assuming, *arguendo,* that debtor could prove that the City's delay contributed to its failure timely to obtain a loan, we would not grant the motion because debtor acknowledges that it factored delays in the loan application process in bargaining for and obtaining the February 1, 1994 deadline. "The broad power [granted by Rule 60(b)(6)] is not for the purpose of relieving a party from free, calculated and deliberate choices he has made." 11 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2864, at 214 (1973). *See also Fustok v. Conticommodity Services, Inc.,* 122 F.R.D. 151, 158 (S.D.N.Y.1988), *aff'd,* 873 F.2d 38 (2d Cir.1989) (Rule 60(b)(6) not available to spare litigants consequences of tactical decisions made in the course of litigation); *Wagner Spray Tech Corporation v. Wolf,* 113 F.R.D. 50, 53 (S.D.N.Y.1986) (same).

Debtor does not believe that given the status of the Foreclosure Action, Arch can get a judgment of foreclosure and sell the Building within the next 3 to 4 months. *See* Puretz Aff., ¶ 8. Accordingly, its goal is to preserve its right under the Stipulation and Order to pay off Arch at the reduced sum of

---

**3.** In September 1993, the Mayor of the City of New York was the Honorable David N. Dinkins, a Democrat. In November, he lost his bid for reelection to his Republican opponent, Rudolph W. Giuliani. Mayor Giuliani took office on January 1, 1994.

$942,000. Although debtor's opposing papers suggest that it intends to reorganize, *see* Puretz Aff., ¶ 7, Neiman Aff., ¶ 11, at the hearing, counsel explained that debtor's strategy for exiting bankruptcy is to pay off Arch's claim, as reduced, and then voluntarily dismiss its case, with a promise to fully satisfy the claims of all other creditors. Debtor argues that if it cannot implement that strategy, debtor and its creditors (save Arch) will suffer undue hardship. Without commenting on whether debtor can voluntarily dismiss its case, *compare* 11 U.S.C. § 1112(a), *with* 11 U.S.C. § 1112(b), we find no merit to that contention. Not only did debtor fail to prove that it will ever be able to pay off Arch, it adduced no evidence that it can satisfy the claims of its remaining creditors. Because debtor's exit strategy is not feasible, neither debtor, nor its creditors, will suffer undue hardship if the motion is denied.

Debtor also argues that the lack of prejudice to Arch is a basis for granting the motion. We are not aware of any court that has read Rule 60(b)(6) that broadly. *Cf. Davis v. Musler,* 713 F.2d 907, 915–17 (2d Cir.1983) (lack of prejudice to non-moving party is relevant in determining whether to vacate default judgment under Rule 60(b)(1)). Even assuming that the factor is relevant, debtor's motion must fail. Contrary to debtor's assertions, Arch will be prejudiced if its rights under the Stipulation and Order are modified because there is no basis in law or fact to compel it will be prejudiced - if its rights under the Stipulation and Order are modified because there is no basis in law or fact to compel it to accept less than the agreed amount of its claim.

## Conclusion

Based on the foregoing, debtor's motion is denied. Arch is directed to SETTLE AN ORDER.