**In re AMC REALTY CORP., Debtors.**

**No. 01 B 12059(REG).**

United States Bankruptcy Court, S.D. New York.

Oct. 23, 2001.

---

Abrams Garfinkel & Rosen, LLP, New York City, By Eric A. Rosen, Esq., for the Debtor.

Steinberg & Associates, Kew Gardens, NY, By Herbert Noel Steinberg, Esq., for Mortgageholder New Turn Investment Corp.

Lapidus & Smith, LLP, New York City, By Steven R. Lapidus, for Secured Creditor.

Carolyn S. Schwartz, Office of the United States Trustee, New York City, By Tracy Hope Davis, Esq.

## DECISION AND ORDER ON MOTION FOR DISMISSAL, OR, ALTERNATIVELY, FOR RELIEF FROM THE STAY.

ROBERT E. GERBER, Bankruptcy Judge.

### Introduction

In this case under chapter 11 of the Bankruptcy Code—the second chapter 11 case filed in this district by AMC Realty Corporation ("the Debtor")—New Turn Investment Corporation (the "Mortgageholder") moves, pursuant to Bankruptcy Code section 1112(b), to dismiss it for "cause," and in particular, for bad faith filing. In the alternative, the Mortgageholder moves, pursuant to Bankruptcy Code section 362(d)(1), for relief from the automatic stay, for "cause," to effect the delivery of the deed to the Debtor's only material asset—real property in Queens, New York—pursuant to a stipulation and order (hereafter, "Ordered Stipulation") entered following mediation in the first chapter 11 case, from which the Debtor now seeks relief under F.R.C.P. 60(b), as made applicable to bankruptcy cases under Fed. R. Bankr.P. 9024.[1]

The motion requires consideration, along with the factors traditionally considered in determining whether "cause" exists for dismissal or relief from the stay, of whether it is appropriate to grant relief from an order entered on a stipulation after mediation when relief from the Ordered Stipulation could result in distributions to unsecured creditors and where the alternative could be regarded as delivering a forfeiture to the Mortgageholder—but where the Debtor had ample time to avoid those consequences, and, more importantly, where this result was bargained for, and foreseeable, during the course of court-supervised mediation.

For the reasons that follow, I conclude that the interests underlying mediation, at least when foreseeable consequences result (and especially after the considerable passage of time here between the entry into the Ordered Stipulation and the request for relief), require that the Ordered Stipulation be enforced, and that Rule 60(b) relief be denied. I further conclude that although, under these circumstances, I cannot and do not find "bad faith" in the filing, "cause" exists for relief from the stay to permit the Ordered Stipulation to be enforced.

The following constitutes my findings of fact, conclusions of law, and bases for the exercise of my discretion with respect to this determination.

*Facts*

Upon an initial hearing on the motion, I authorized the parties to submit additional papers to deal with the policy issues it raised, and thereafter provided a further opportunity for oral argument. Having considered the extensive papers submitted on the motion,[2] as well as oral argument at the two hearings, I find as facts the following:

The Debtor is a single asset real estate debtor that owns and operates real property (the "Property") located at 47–01 Kissena Boulevard, in Flushing, New York.[3] The Debtor was formed solely to hold title in the Property.[4] The Property has an estimated valued of $900,000[5] and is leased to one tenant, Khalid Harij ("Mr.Harij"), who runs an automobile repair and body shop.[6] Mr. Harij is said to pay approximately $11,000 per month in rent pursuant to a lease that expires in sixteen months.[7] As will be discussed below, Mr. Harij is interested in purchasing the Property, and pending before this Court is a motion for approval of an agreement between the

---

1. In that connection, the Mortgageholder also seeks a default judgment against the Debtor and attorneys fees.

2. After the Mortgageholder filed its motion for dismissal, or, in the alternative, relief from the stay, followed by a supplemental affirmation in support of its motion, the Debtor filed a memorandum of law in opposition; the Mortgageholder filed a reply; the Debtor filed a supplemental memorandum in opposition; and the Mortgageholder filed a second supplemental affirmation in support of its motion. References to these papers are cited as Mortgageholder's Motion at __; Mortgageholder's Supp. Affirm. # 1 at __; Debtor's

Opp. # 1 at __; Mortgageholder's Reply at __; Debtor's Opp. # 2 at __; and Mortgageholder's Supp. Affirm. # 2 at __.

3. *See* Debtor's Voluntary Petition, Exhibit A; 341 Hearing Transcript dated May 21, 2001 ("341 Hearing Transcript"), at 8.

4. *See* 341 Hearing Transcript at 7.

5. *See* Debtor's Voluntary Petition, Exhibit D.

6. *See* 341 Hearing Transcript at 11–12.

7. *See id.* at 13–14.

Debtor and Mr. Harij to effect the sale of the Property to Mr. Harij.[8]

The Debtor's president and sole shareholder is Mitchell Silbowitz.[9] The Debtor's stated total assets are $900,000 and its total liabilities are $940,000, including $700,000 in secured debt and $240,000 in unsecured debt and taxes.[10] The Debtor's monthly expenses are said to be $1,000, which represents one-half of the monthly real property taxes due.[11] According to the Debtor, Mr. Harij pays the other one-half of the real property taxes, as well as all other expenses.[12]

The Property is secured by a mortgage held by the Mortgageholder, said by the Debtor to be in the amount of $700,000 (the "Mortgage").[13] The Property was originally secured by a mortgage held by New York Business Development Corporation to secure a loan in the amount of $499,900, which was then assigned to the Mortgageholder in April of 1993.[14] The Mortgageholder also claimed to hold a valid second mortgage to secure indebtedness in the additional amount of $163,310.03.[15]

In October of 1996, as the result of non-payment of the Mortgage, the Mortgageholder commenced a mortgage foreclosure action against the Debtor in the Supreme Court of the State of New York, Queens County (the "State Supreme Court").[16] Shortly thereafter, the Mortgageholder commenced a second action in the State Supreme Court seeking to impose a constructive trust upon the Property with respect to the second mortgage, which the Mortgageholder claimed to have obtained but which had not yet been recorded.[17] The Debtor appeared in both actions and filed answers denying the allegations and asserting affirmative defenses with respect to the complaint filed by the Mortgageholder.[18] As the result of the Debtor's failure to pay its real estate taxes, the State Supreme Court, in the foreclosure action, had directed that a receiver be appointed.[19]

On November 28, 1997, the Debtor filed the first of the two chapter 11 cases ultimately filed in this Court; it was assigned to Chief Judge Brozman. Among other things, the Debtor's first chapter 11 filing had the effect of staying both State Supreme Court actions, and the appointment of a receiver for the Property.

Shortly thereafter, the Debtor commenced an adversary proceeding (the "Adversary Proceeding") against the Mort-

---

8. The Debtor has stated that it is its intent, if this motion is granted, to sell the Property, pay the Mortgageholder's claim and then pay the claims of other unsecured creditors. *See* Debtor's Opp. # 1 at 2; 341 Hearing Transcript at 13–14. The proposed purchase price for the Property is $900,000. *Id.* at 15. The Debtor asserts that adequate protection payments pending such a sale could be provided to the Mortgageholder, whether the sale is pursuant to 363(b) of the Bankruptcy Code or pursuant to a plan of reorganization. *See* Debtor's Opp. # 1 at 2, n. 1.

9. *See* 341 Hearing Transcript at 8.

10. The $240,000 of unsecured debt can be broken down into $225,000 in unsecured debt and approximately $15,000 in taxes. *See*

Debtor's Summary of Assets and Liabilities, Exhibit G.

11. *See* 341 Hearing Transcript at 9.

12. *See id.*

13. *See* Debtor's Voluntary Petition, Exhibit D.

14. *See id.*

15. *See* Debtor's Opp. # 1 at 3.

16. See Mortgageholder's Motion at 2.

17. *Id.* at 2–3.

18. *See* Debtor's Opp. # 1 at 3.

19. *See* Mortgageholder's Motion at 3.

gageholder, alleging, among other things, that (1) certain funds that the Debtor had transferred to a corporation owned and/or controlled by an individual who also owned and/or controlled the Mortgageholder had been "laundered"; (2) the Mortgage had been satisfied; and (3) the Debtor's signature on the second mortgage had been forged.[20]

The parties agreed to proceed with mediation with respect to those issues, and in February 1998, Judge Brozman entered an order appointing a mediator. The mediation resulted in the previously-mentioned Ordered Stipulation—a stipulation that was so-ordered by Judge Brozman on September 1, 1998 and entered the next day. The Ordered Stipulation provided, in relevant part:

NOW, THEREFORE, it is hereby stipulated and agreed by and between the Debtor and New Turn, which stipulation, when "so-ordered" by a United States Bankruptcy Judge, shall constitute an order and judgment of the court as follows:

1. The Debtor acknowledges that the Mortgage is a valid existing first mortgage on the Property in the sum of $700,000. The Debtor further acknowledges that it has no defenses, offsets or counterclaims to the Mortgage and waives the right to challenge in any way the validity or the amount of the Mortgage ($700,000);

2. The Second Mortgage is deemed of no force and effect and New Turn and/or New Turn Realty Corp. shall, upon approval of this stipulation deliver either a satisfaction or assignment of the Second Mortgage in recordable form to the Debtor upon the Debtor's request.

3. New Turn agrees to modify and extend the Mortgage upon the following terms and conditions:

(a) On July 1, 1998 and August 1, 1998, the Debtor shall pay $5,000.00 to New Turn which funds can be paid from the funds on deposit in the debtor-in-possession bank account at Sterling National Bank;

(b) Commencing on September 1, 1998 and concluding on August 1, 2000, the Debtor shall pay New Turn the sum of $4,000.00 per month;

(c) On or before September 1, 2000, the Debtor shall pay New Turn the sum of $700,000.00 in full and complete satisfaction of the Mortgage. Upon payment of the $700,000.00, New Turn shall, at the Debtor's Sole option, provide either a satisfaction of the Mortgage or an assignment thereof;

(d) The Debtor shall have the right to pay New Turn $675,000.00 on or before February 1, 1999 and obtain a satisfaction or assignment of the Mortgage at the Debtor's sole discretion; and

(e) If the Debtor fails to satisfy the Mortgage on or before September 1, 2000, the monthly payments shall increase to $9,333.33 per month commencing September 1, 2000 for up to six (6) months (the "Grace Period"). If the Debtor fails to fully satisfy the Mortgage at the end of the Grace Period (by March 1, 2001), *the Debtor shall immediately execute a deed to the Property in favor of New Turn or such other entity as New Turn shall designate.*

(Emphasis added).[21]

The Ordered Stipulation also provided that that the dismissal of the Debtor's

---

20. *See* Debtor's Opp. # 1 at 3; Mortgageholder's Motion at 4.

21. The Ordered Stipulation also provided, among other things, that the state court fore-

then-existing chapter 11 case would in no way affect the validity and continued effect of the Ordered Stipulation.[22] On September 1, 1998, the Debtor's first chapter 11 case was dismissed,[23] and the case was closed on September 4, 1998.

Without dispute, the Debtor paid the monthly interest payments that were required under the Ordered Stipulation,[24] but, also without dispute, the Debtor did not pay the balance of the Mortgage by September 1, 2000, as provided under the Ordered Stipulation, and the Debtor then elected to proceed with the required monthly payments during the six-month Grace Period.[25]

During the Grace Period, the Debtor made no further payments; on March 1, 2001, the expiration of the Grace Period, the balance of the Mortgage was not paid, nor were the last six payments of interest, at an increased rate, that the Ordered Stipulation required.[26] The Debtor did not sign a deed to the Property over to the Mortgageholder, although such was duly demanded, triggering this controversy.[27]

Thereafter on March 20, 2001, the Mortgageholder filed a motion to reopen the Adversary Proceeding and to enter a default judgment against the Debtor to implement the Ordered Stipulation.[28] On April 9, 2001, the day before that motion was to be heard, the Debtor filed this second chapter 11 case, which was assigned to me.[29]

The Debtor frankly admitted, in its Local Bankruptcy Rule 1007–2 Affidavit, that the filing of this petition was due to its inability to comply with the obligations set forth in the Ordered Stipulation.[30] The only unsecured creditors listed in the Debtor's petition were:

(1) Steven Gordon, holding an unsecured claim in the estimated amount of $100,000;

(2) Charles and Maryann Racalbuto, holding an unsecured claim in the estimated amount of $60,000;

(3) Steven R. Lapidus, Esq., holding an unsecured claim in the estimated amount of $35,000; and

(4) Ira Yavarkosk, holding an unsecured claim in the estimated amount of $30,000.[31]

Although not listed in its petition, the Debtor stated at the 341 hearing that there are also two creditors that hold judgments against the Debtor.[32] A creditors' committee was formed, and sitting on the

---

closure and constructive trust actions were deemed settled upon the court's approval of the Ordered Stipulation, and that if any party defaulted under these terms, in any action to enforce these terms, the prevailing party would be entitled to reasonable attorneys' fees, costs and disbursements. *See* Ordered Stipulation, ¶¶ 9, 12.

22. *See id.*, ¶ 13.

23. *See* 341 Hearing Transcript at 5–6.

24. *See* Mortgageholder's Motion at 5.

25. *See id.;* Exhibit D.

26. *See id.*

27. *See id.;* Exhibit B.

28. *See id.* at 5–6; Exhibit C. The matter was set to be heard before Judge Gropper of this Court, who succeeded to the bulk of Judge Brozman's cases

29. The adversary proceeding initially assigned to Judge Gropper, in which the underlying request for the default judgment implementing the Ordered Stipulation was filed, was thereafter reassigned, by the Clerk's Office, to me.

30. *See* Debtor's Petition, Exhibit B.

31. *See* Debtor's Petition, Exhibit C.

32. *See* 341 Hearing Transcript at 16.

committee are Ira Yavarkosk, Steven Gordon and Charles Racalbuto.

### Discussion

The Mortgageholder seeks dismissal or relief from the stay, arguing that this case has substantially all of the trappings of a bad faith filing. The Mortgageholder argues, inter alia, that this is a repeat filing, to frustrate the Mortgageholder in its exercise of rights it acquired as part of the Ordered Stipulation, with its origins in a two-party dispute between the Debtor and the Mortgageholder, where there is no business to save or employees to keep employed, and there are few, if any, non-insider creditors.

The Debtor disputes a few, but only a few, of those matters,[33] but its most important point is that it now has a buyer for the Property, and that if the sale goes through, its creditors will receive payment on their claims. The Debtor argues that relief from the Ordered Stipulation is necessary to avoid a windfall to the Mortgageholder, and to provide a recovery for its creditors; though it made no formal motion for relief in this regard, each of the Debtor, and the Mortgageholder, have then discussed the potential applicability of Rule 60(b) to this motion, and the requirements for such relief.

### I.

The analyses under Bankruptcy Code sections 1112(b) and 362(d)(1) are very similar. Section 1112(b), addressing conversion or dismissal of a chapter 11 case, provides, in relevant part:

> Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee or bankruptcy administrator, and after no-

tice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for *cause* ....

11 U.S.C. § 1112(b) (emphasis added).

Likewise, section 362(d)(1) provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—
>
> (1) for *cause* ....

11 U.S.C. § 362(d)(1) (emphasis added).

### A.

■ While each of Code sections 1112(b) and 362(d)(1) states that the authority it provides—dismissal or relief from stay, respectively—may be granted for "cause," and lists one or more examples of cause, each precedes the list with the word "includes," and none of those lists is exhaustive. Cause, for either dismissal or relief from the stay, may be found based on unenumerated factors, including "bad faith," *see C–TC 9th Avenue Partnership v. Norton Co. (In re C–TC 9th Avenue Partnership)*, 113 F.3d 1304, 1313 (2d Cir.1997), or failure to deal with creditors fairly even where "bad faith" is not found. *See In re Kaplan Breslaw Ash LLC*, 264 B.R. 309, 334 (Bankr.S.D.N.Y.2001) (Gerber, J.), and cases cited therein. *See also In re Hudgins*, 188 B.R. 938, 946 (Bankr. E.D.Tex.1995) ("cause" under section 362(d)(1) is not limited to those situations where the property of a party lacks ade-

---

**33.** E.g., it argues that its creditors are bona fide, as evidenced by the fact that they have formed a committee.

quate protection; instead, "cause" "encompasses many different situations").

As Chief Judge Brozman noted in *In re 234–6 West 22nd St. Corp.*, 214 B.R. 751 (Bankr.S.D.N.Y.1997) (wherein she granted relief from the stay, under section 362(d)(1), by reason of bad faith filing), "the standards for bad faith as evidence of cause," whether in the context of dismissal or relief from the stay, "are not substantively different from each other." *Id.* at 757; *see also In re Setzer*, 47 B.R. 340, 344 (Bankr.E.D.N.Y.1985) ("[b]ad faith has frequently been held to provide sufficient cause to warrant both types of relief"); *Kaplan Breslaw Ash*, 264 B.R. at 334; *In re Eclair Bakery Ltd.*, 255 B.R. 121, 138 (Bankr.S.D.N.Y.2000) (Gerber, J.) (citing *234–6 West 22nd St.* and *Setzer*). She cautioned, in this connection, that the concept of bad faith filing should be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors, except in extraordinary circumstances. *234–6 West 22nd St.*, 214 B.R. at 757. She then continued:

> [W]hen faced with a motion to lift the stay on bad faith grounds, a judge must conduct a careful analysis similar to that performed with a motion to dismiss a case on bad faith grounds. In both cases, the relief sought is an extraordinary remedy that requires careful examination of the facts on a case-by-case basis. But where the circumstances require such relief, and the cases granting both types of motions are legion, a judge must not shrink from ordering it.

*Id.*

### B.

Over the years, a number of factors have been identified which may be indicative of a bad faith filing, and whose presence, or absence, has regularly been considered:

(1) the debtor has only one asset;

(2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6) the debtor has little or no cash flow;

(7) the debtor cannot meet current expenses including the payment of personal property and real estate taxes; and

(8) the debtor has no employees.

*C–TC 9th Avenue Partnership*, 113 F.3d at 1311 (citing *Pleasant Pointe Apartments, Ltd. v. Kentucky Hous. Corp.*, 139 B.R. 828, 832 (W.D.Ky.1992)).

Another factor frequently considered has been whether the case sought to be dismissed is a repeat filing, and, if so, the circumstances surrounding the second filing. *See, e.g., 234–6 West 22nd St. Corp.*, 214 B.R. at 757–758. Repeat filings do not *per se* require dismissal, *cf. id.* (discussing changed circumstances that might warrant the repeat filing), but, particularly where they are not the consequence of changed circumstances, they warrant special scrutiny.

Examining the indicators of bad faith filing listed in *C–TC*, quoted above, it is obvious that substantially all of them are present here:

(1) the Debtor's only asset is the Property;

(2) the Debtor has few unsecured creditors whose claims are small in comparison to the Mortgageholder's claim;

(3) the Debtor's one asset, the Property, was the subject of a mortgage foreclosure action as a result of the Mortgage in default in the Debtor's first chapter 11 case; and the Property would now be deeded over, in lieu of foreclosure, under the Ordered Stipulation;

(4) the Debtor's current financial situation primarily involves only the Debtor and the Mortgageholder, and this was resolved in the Adversary Proceeding in the Debtor's first bankruptcy case;[34]

(5) the timing of the Debtor's most recent chapter 11 filing had the purpose (though arguably for proper motives) to delay and frustrate the legitimate efforts of the Mortgageholder to enforce its rights under the Ordered Stipulation;

(6) the Debtor has little or no cash flow;

(7) the Debtor cannot meet current expenses, and owes approximately $15,000 in taxes;[35] and

(8) the Debtor has no employees.

*See C–TC 9th Avenue Partnership*, 113 F.3d at 1311.

Then, I note that this is a repeat filing.

Here, with substantially every indicator of bad faith filing present, the Mortgageholder has established, subject to the analysis in section I(C) below, a strong showing for dismissal for cause, and, indeed, for bad faith filing.

### C.

The Debtor does not dispute the matters discussed above in any significant respect, but opposes the Mortgageholder's motion by arguing that there is now the potential, by reason of the proposed sale, to pay the Mortgageholder the actual amount owed to it and to additionally make significant payments to unsecured creditors. The Debtor argues that honoring the Ordered Stipulation would result in a windfall to the Mortgageholder, and that there exist "exceptional circumstances" in this case to warrant relief from the Ordered Stipulation pursuant to F.R.C.P. 60(b). I consider those contentions next.

Rule 60(b), which is applicable in bankruptcy cases under Fed. R. Bankr.P. 9024 with three exceptions not relevant here, governs requests for relief from judgments or orders in a bankruptcy court. It provides, in relevant part:

> **Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered

---

**34.** Of course, I recognize that this case is not necessarily solely a two-party dispute between the Debtor and the Mortgageholder, as there are other creditors in this case. However, the filing of the Debtor's second bankruptcy petition was triggered, as the Debtor admitted in its Rule 1007-2 Affidavit, by the Debtor's default under the Ordered Stipulation, which involved only the Debtor and the Mortgageholder. More importantly, differences with respect to whether relief from the Ordered Stipulation should be granted would have

been better heard in the Adversary Proceeding, in which the Ordered Stipulation was entered, rather than by trying to defeat the purpose and/or effect of the Ordered Stipulation by a successor filing.

**35.** *See* n. 10 above. Especially in the context of the other factors, I do not regard this one as particularly significant, and I address it only for completeness.

evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed.R.Civ.P. 60(b).

 A motion for relief from an order or judgment is within the discretion of the court. *Nemaizer v. Baker*, 793 F.2d 58, 61–62 (2d Cir.1986). "Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *Id.* at 61; *see also Paddington Partners v. Econocom*, 34 F.3d 1132, 1144 (2d Cir.1994) (Rule 60(b) "preserves a balance between serving the ends of justice and ensuring that litigation reaches an end within a finite period of time"); *In re AL & LP Realty Co.*, 164 B.R. 231, 234 (Bankr.S.D.N.Y.1994) (Garrity, J.) (Rule 60(b) is "intended to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done").

There has been no suggestion, nor could there be, that any clause other than Clause (6) of Rule 60(b) might apply. Subparagraphs (4) and (5) of Rule 60(b) lack even facial applicability, and, in my view, there is no reasonable basis for arguing the applicability of Rule 60(b)(1), (2), or (3), respectively—mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence; or fraud. The Debtor states that the Mortgageholder "knew full well that the only way that the Debtor could pay the $700,000 balloon payment was to sell the Property or otherwise take out [the Mortgageholder's] debt through refinancing,"[36] and, obviously, the Debtor knew that, too. The possibility that the Debtor might not be able to do one of those things by the deadlines provided was plainly foreseeable, and the provision providing for higher rates of interest in the event of a failure to pay the principal by the first deadline date of September 1, 2000 underscores that foreseeability.

Thus, it is necessary to consider whether the likelihood of distributions to unsecured creditors, and/or avoidance of the arguable forfeiture, provides a basis for invocation of Clause (6)—and to consider whether it is appropriate to vacate a stipulation and order entered into as the culmination of a mediation process.

 While the scope of Rule 60(b)(6) has been "variously interpreted," *Nemaizer*, 793 F.2d at 63, ranging from "extremely meager" to a "grand reservoir," *see id.* and cases cited therein, its underlying purpose is "to do justice in a particular case when relief is not warranted by the preceding clauses." *Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 461 (2d Cir.1994). Here, however, invocation of Rule 60(b)(6) is not necessary to do justice, and, in my view, applying it here would do just the opposite. I come to this view for several reasons.

The first is the absence of exceptional circumstances or unusual hardship. In

---

**36.** Debtor Opp. # 2 at 5.

*Nemaizer,* the Second Circuit stated that Clause (6) of Rule 60(b):

> is properly invoked only when there are extraordinary circumstances justifying relief, . . . when the judgment may work an extreme and undue hardship, . . . *and* when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule.

793 F.2d at 63 (citations omitted; emphasis added). That formulation requires each of those three prongs to be satisfied. In another case, the Second Circuit stated that one or the other of the first two prongs had to be shown, without requiring that both of them be. *See PRC Harris, Inc. v. Boeing Co.,* 700 F.2d 894, 897 (2d Cir.1983), *cert. denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983) ("we have noted that because of the potentially broad scope of [Rule 60(b)(6) ], relief should only be granted where the moving party has demonstrated 'extraordinary circumstances' or 'extreme hardship' "; emphasis added). In two other cases, the Second Circuit has identified the need for a showing of extraordinary circumstances, without stating whether it is also necessary to show extreme and undue hardship, or whether the latter is a satisfactory substitute. *See Paddington Partners,* 34 F.3d at 1142 (citing *Nemaizer*); *Transaero,* 24 F.3d at 461.

I do not need to resolve this inconsistency (if it is one), as I do not believe that the Debtor has shown either extraordinary circumstances or extreme and undue hardship. The essence of the mediated settlement between the Debtor and the Mortgageholder was to provide for a fixed time during which the Debtor could take steps to pay off the mortgage, or arrange for a sale of the Property to do so, and the circumstance that the Debtor might fail to do so within the negotiated time was hardly extraordinary. Also, as noted, the possibility that the Debtor might have failed to do so by a prescribed date was not only anticipated; it was expressly provided for, by attaching a price to continued nonpayment (i.e., a higher interest rate), and, thereafter, providing for what amounts to a deed in lieu of foreclosure.

Also, that the Property might be worth more than the mortgage principal was also foreseeable; indeed, it was presumably the reason why the Debtor entered into the Ordered Stipulation in the first place. There is nothing here that the parties failed to anticipate. As Judge Garrity noted, in considering a like issue before him, "[t]he broad power [granted by Rule 60(b)(6) ] is not for the purpose of relieving a party from free, calculated and deliberate choices he has made." *AL & LP Realty Co.,* 164 B.R. at 234. Holding the Debtor to the deal it struck is neither extraordinary nor an "extreme" or "undue" hardship.[37]

The second reason for my views in this regard is the time at which this request comes. While Rule 60(b)(6), unlike subsections (1), (2) and (3) of Rule 60(b), does not impose a particular time limit, it requires that such a motion be made within a reasonable time of the date the judgment it seeks to modify becomes final. *See PRC Harris, Inc.,* 700 F.2d at 897; *AL & LP Realty Co.,* 164 B.R. at 233–234. In considering whether such a motion is timely, a court must "scrutinize the particular cir-

---

**37.** For this reason, I consider it inappropriate to speak of "changed circumstances" as a basis for relief under Rule 60(b)(6). The potential circumstance of a failure to pay by the deadline was expressly contemplated and provided for. The Ordered Stipulation, by any reading, gave the Debtor a fixed time to arrange for a sale if that was required to pay off the principal on the Mortgage. The fact, as it ultimately turned out, that the sale materialized only after that time does not represent a "changed circumstance" justifying disregard of the parties' earlier agreed-on provision for exactly such a contingency.

cumstances of the case, and balance the interest in finality with the reasons for delay." *PRC Harris, Inc.*, 700 F.2d at 897; *AL & LP Realty*, 164 B.R. at 234–235.

This request did not come at a time remotely close to the time the Ordered Stipulation was entered; to the contrary, the Debtor availed itself of the benefits of the Ordered Stipulation for nearly three years, and only then did the Debtor determine that it wished for relief from its terms. The Debtor admits that at the time the Ordered Stipulation was entered, it knew it would be unable to make the $700,000 payment without a timely sale or refinancing.[38] If the Debtor truly believed that it would not be able to abide by the terms of the Ordered Stipulation, it could have, and should have, moved for relief at an earlier time. The Debtor has presented no persuasive reason justifying the delay of almost three years from the date the Ordered Stipulation was entered, and I find that the Debtor failed to raise its concerns with respect to the Ordered Stipulation within a reasonable time. *See PRC Harris, Inc.*, 700 F.2d at 897 (where there was delay of "almost one year," party failed to comply with the reasonable time requirement of Rule 60(b)(6)); *Fustok v. Conticommodity Services, Inc.*, 122 F.R.D.

151, 157–158 (S.D.N.Y.1988) (Lasker, J.), *aff'd without discussing this issue,* 873 F.2d 38 (2d Cir.1989) (relief under Rule 60(b)(6) denied because, among other things, request for relief, 23 months after entry of order, was not made in reasonable time).[39]

The third reason for the exercise of my discretion on this motion, which is ultimately the most important from my perspective, is that the Ordered Stipulation resulted from an agreement in mediation. In my view, it is important to provide parties with the confidence that if they go to mediation, and reach an agreement as part of that process, their agreement will be honored and enforced. To do otherwise would materially impair the mediation process and give litigants justifiable doubt as to whether they should participate in the first place.

The courts have repeatedly denied efforts by litigants to sidestep consensual resolutions by resort to Rule 60(b). Where "the parties submitted to an agreed-upon disposition instead of seeking a resolution on the merits ... the burden to obtain Rule 60(b) relief is heavier than if one party proceeded to trial, lost, and failed to appeal." *AL & LP Realty*, 164 B.R. at 234. "Because settlements are

---

**38.** *See* Debtor's Opp. # 2 at 5–7.

**39.** The facts here are distinguishable from the facts in *In re Krautheimer,* where the court ultimately concluded, based on the "unusual circumstances" of the case, that 18 months was not an "unreasonable" time for the filing of a motion under Rule 60(b)(6). The court in *Krautheimer* acknowledged that "there is no solid pattern that can be derived from the case law on the issue of 'reasonableness,'" and stated that a specific time period is not necessarily unreasonable, but that it may become unreasonable "when not accompanied by unusual circumstances or some other reasonable explanation." *Rupert, Jr. v. Krautheimer (In re Krautheimer),* 210 B.R. 37, 46 (Bankr.S.D.N.Y.1997).

The "unusual circumstances" in *Krautheimer* that justified relief under Rule 60(b)(6) included: (1) the movant was a pro-se litigant who had been litigating under adverse conditions for almost two years; (2) the movant had been denied an opportunity to litigate the issue of dischargeability on the merits by the application of collateral estoppel on summary judgment; and (3) the movant had potential defenses which could be adjudicated fairly only upon an evidentiary hearing. The court held that 18 months should not be deemed to be an unreasonable amount of time. *See id.* at 46.

favored in federal law and 'the prompt resolution of claims and disputes makes the compromise of claims of particular importance in the bankruptcy reorganization', settlement of bankruptcy claims should be liberally construed and a stricter standard is applied to a Rule 60(b) motion in this context." *McHale v. Huff (In re Huff)*, 118 B.R. 146, 148 (Bankr.S.D.Fla. 1990) (citing *In re Astroglass Boat Co., Inc.*, 32 B.R. 538, 543 n. 8 (Bankr. M.D.Tenn.1983)). Thus, a party attacking a settlement agreement bears the burden of proving its invalidity and unenforceability, "either by fraud practiced upon him or by a mutual mistake under which both parties acted." *Brown v. Nationscredit Commercial Corp.*, 2000 WL 888507, at *3, 2000 U.S. Dist. LEXIS 9153 at *5 (D. Conn. June 23, 2000) (Burns, J.) (citing *Callen v. Pennsylvania R.R. Co.*, 332 U.S. 625, 630, 68 S.Ct. 296, 92 L.Ed. 242 (1948)) (enforcing a settlement agreement and setting forth the policy that favors the settlement of disputes and the avoidance of costs and time-consuming litigation); *Warner Communications, Inc. v. S.S Argonaut*, 1985 WL 1701 at *1, 1985 U.S. Dist. LEXIS 18710 at *2 (S.D.N.Y. June 20, 1985) (Sweet, J.) (setting forth this principal and concluding party failed to meet this burden).[40]

■ I need not decide, and do not decide, whether a Ordered Stipulation reached on agreement in mediation can never be overturned. I hold merely that agreement after mediation is a factor appropriately to be considered when relief from an order is sought, and an important one.

For all of the foregoing reasons, I consider relief under Rule 60(b) to be inappropriate, and Rule 60(b) relief is denied.

### D.

■ With the denial of Rule 60(b) relief, there is no basis for concluding that anything trumps the application of the factors announced in *C–TC*, insofar as those factors require dismissal of this chapter 11

---

**40.** The Debtor cites *State Bank of Southern Utah v. Gledhill (In re Gledhill)*, 76 F.3d 1070 (10th Cir.1996), to support its position that relief under Rule 60(b)(6) should be granted. In *Gledhill*, a creditor had obtained a bankruptcy court order granting it relief from the automatic stay to foreclose a judgment lien it held on property owned by the chapter 11 debtors. Thereafter, the chapter 11 case was converted to chapter 7, by which time the value of the property had increased, and the chapter 7 trustee filed a motion under Bankruptcy Rule 9024 and Fed.R.Civ.P. 60(b) requesting that the bankruptcy court vacate its earlier order granting relief from the stay so that the trustee could liquidate the property in a commercially reasonably manner (as opposed to a foreclosure sale), so that more money would be available for distribution for the benefit of all creditors. The bankruptcy court ruled that the chapter 7 trustee had demonstrated changed circumstances, i.e., the increase in the property value, which justified vacating its earlier order vacating the stay. This ruling was affirmed by both the district court and the court of appeals. *See id.*

However, *Gledhill* is readily distinguishable from this case. In *Gledhill*, there was a basis for a conclusion that there were changed circumstances associated with the increase in the value of the property. Here, by contrast, the potential for an increase in the value of the property was both foreseeable and likely the entire purpose of the stipulation. And more fundamentally, in *Gledhill* there was no stipulation or settlement that was bargained for and entered into between the parties, in mediation or otherwise, and the public policy concerns for honoring settlement agreements, and avoiding an impairment of the mediation process, were wholly absent.

For that reason too, I am not persuaded by the Debtor's argument that there is an appropriate analogy here to permitting debtors to file to obtain the protection of the section 362 stay as a means of redeeming property before foreclosure; the argument fails to take into account the factors discussed above in connection with the importance of honoring stipulations of settlement, particularly those reached in mediation.

case. However, the issues presented by the Debtor with respect to salvaging value incident to the proposed sale, and even with respect to Rule 60(b) relief, were, in my view, fairly litigable, and I believe it inappropriate to hold that this case was filed in "bad faith." Thus, in applying *C–TC*, I dismiss this case as a consequence of the application of the *C–TC* factors, but based on non-enumerated "cause" for dismissal. *See, e.g., In re Head*, 223 B.R. 648, 653 (Bankr.W.D.N.Y.1998) (Kaplan, C.J.) (dismissing chapter 11 and 13 cases for "non-enumerated" cause).

## II.

For the foregoing reasons, while I do not find "bad faith" in this filing, I nevertheless conclude that cause for each of dismissal and for relief from the stay exists. On balance, however, I believe that dismissal is more appropriate here. Going through an analysis akin to the one I engaged in *In re Syndicom, Inc.*, 268 B.R. 26 (Bankr.S.D.N.Y.2001) (Gerber, J.), at Point III, I believe that the factors tilt contrary to the way they tilted in *Syndicom.* After the Ordered Stipulation is enforced, there will be no material assets to distribute to creditors. The filing here was inappropriate, but, unlike the filing in *Syndicom,* it nevertheless had a colorable basis. I do not believe that there is a material risk of still another filing, as I feared in *Syndicom,* and there is a lesser need, in my mind, to keep this case open to maintain control to avoid further abuses.

The Mortgageholder also seeks attorneys' fees under ¶ 12 of the Ordered Stipulation. Such a request does not arise under section 1112(b) or even section 362(d)(1), but rather as a matter of contract under the Ordered Stipulation. If the Mortgageholder wishes to pursue the attorneys' fees, it can and should seek them in the reopened adversary proceeding, in which the Mortgageholder may now proceed, free from any constraints imposed under the automatic stay. In connection with any such application (which I do not prejudge), the basis and amount of any claimed attorneys fees should be appropriately documented.

This case shall be, and hereby is, dismissed for "cause," but not for bad faith filing. This is not just a decision, but an order, and the time to appeal from it will run from its entry. While this decision may resolve all matters incident to the enforcement of the duty to provide a deed under the Ordered Stipulation, and certainly will result in issue preclusion in that regard, I will not deny the Debtor notice and opportunity to be heard with respect to any other defenses. If it wishes to, the Mortgageholder may settle an order in the underlying adversary proceeding, No. 97–B–9205A. providing for enforcement of the duty to deliver the deed to the property, on 10 business days' notice by fax, or 15 business days' notice by mail. During that time, the Debtor may assert any other defenses, and, if any are raised, I will consider them.